[Crim. No. 6883.   Second Dist., Div. One.   Aug. 15, 1960.]

THE PEOPLE, Respondent, v. WALTER WILLIAMS, Appellant.

Walter Williams, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD, P. J.—In a jury trial defendant was convicted of second degree robbery. He admitted allegations of the information that he had been convicted previously of three felonies.

Appellant contends that the evidence was insufficient to support the verdict; and there were ''errors'' which amounted to misconduct by the judge, the prosecutor, and appellant's attorney.

Mrs. Duncanson testified that she had been an employee in the meat department of a food market (at 58th and Vermont

Streets, in Los Angeles) for approximately a year before the robbery occurred; during that time she had seen the appellant in and near the market several times; on February 21, 1959, about 6 :20 p. m., after she had cashed her pay check at the market and had purchased groceries, she left the market and went to her automobile which was on a side street, "quite a distance" from the market; a boy, who was an employee of the market, carried the two bags of groceries, placed them in the right front seat of the automobile, and went back to the market; then she went to the driver's side of the automobile, opened the door, and threw her purse into the automobile and against the door on the opposite side; various articles including $100 cash, were in the purse; she jumped into the automobile and started to pull the door shut, but it did not close completely; the appellant yanked the door open, grabbed her left hand, and leaned across her and toward the opposite door, where she had thrown her purse; he said, "This is a holdup"; while he was making that statement three times, he was trying to get her purse; she raised her knee, and then he gave her a "jab" in the area of her chest, which stunned her for a few seconds; he got her purse, and yanked her out of the automobile; she fell to the street; while appellant had the purse and was beside the automobile, the purse opened and some articles fell out; appellant walked away rapidly, and when he was on the opposite side of the street he ran to the end of the block, around the corner, and out of her sight; a lady, in a nearby house, called the police; the witness went into the house, and soon thereafter the police arrived; about five days after the robbery, she saw appellant in the market and called the police, but appellant went out the rear door and disappeared; about a week thereafter she saw appellant walking on the sidewalk at the rear of the market, and she called the police; soon thereafter the police brought appellant to the market and she identified appellant as the person who had robbed her; the appellant is the person who robbed her.

With reference to having seen appellant in and near the market several times during the year preceding the robbery, Mrs. Duncanson testified that she first saw appellant at the market shortly after she started working there, and on that occasion when she arrived at the market, about 8 a. m., she rapped on the locked door several times in order to gain admittance to the market but no one from within came to open the door; then, appellant, who was on the sidewalk, came to the door, talked to her, rapped on the door, and assisted in getting

someone in the market to open the door; on several occasions thereafter, in the evenings, as she left the market "through the check stand," she saw appellant "around the store"; on an occasion, while she was in a restaurant near the market, the appellant came in and had a conversation with the proprietor of the place. Mrs. Duncanson also testified that while the robbery was being committed she saw appellant's face and she recognized him as a person she had seen in the market. She also testified that when appellant was leaving the scene of the robbery she recognized his manner of walking was "between the shuffle and a heavy walk," and she recognized "his walk as having seen him before."

Appellant testified that he lived a few blocks from the market referred to herein and that he shopped regularly at that market; he could not say whether Mrs. Duncanson was employed there; on February 21, 1959, about 4:30 p. m., he left his home and went to the "Chi Chi" bar at 5th and Figueroa Streets, arriving there about 5 p. m.; he went to that bar to see if his wife was there; she had been away from home since February 6th; while he was in that bar he saw the bartender, whose name is Drums, and he saw a waiter, whose name is Olmstead; he had known them about 10 years; he had a conversation with them about his wife, and he showed a picture of her to them; they had not seen her; he left that bar about 7 p. m. and went to 1st and Figueroa Streets, where he stayed about 30 minutes; then he went to a restaurant at 3rd and Figueroa Streets and talked with a lady there who said that appellant's wife had been there about 3 o'clock in the morning; he was not in the vicinity of the market at 58th and Vermont Streets on February 21 in the evening about 6 o'clock; he did not take a purse out of an automobile. He testified further that he was arrested on March 4, 1959, at his home; the officers came in and, after searching the house, they took him to the parking lot at the rear of the market at 58th and Vermont Streets (the market referred to herein); they brought a lady from the market to their automobile, and then told appellant to say, "This is a robbery"; he complied therewith, and they made him repeat that statement three times; the lady was the witness (Mrs. Duncanson) who testified herein; the officer "walked" him to the fence and back, and then the lady said, "Well, I know him." On cross-examination, he said that he asked the officer why they were arresting him; they said he was accused of robbery, but they did not say it happened on February 21; he did not know the date of the

robbery until he was taking a lie detector test, about three days after the arrest; it took him about a day "to remember" what he had been doing on February 21; he had been convicted previously of three felonies (burglary twice, and robbery).

John Olmstead, a witness on behalf of appellant, testified that on February 21, 1959, he was employed as a waiter at the Chi Chi bar at 5th and Figueroa Streets; on said day he arrived at that bar about 6:15 p. m., and he saw the appellant there about 6:30 p. m.,; appellant called him and showed him a picture of appellant's wife, and said that he was looking for her; appellant left the bar about 7:15 p. m. On cross-examination, the witness said he had been convicted of a felony (possession of narcotics).

With reference to appellant's contention regarding insufficiency of the evidence, he argues, in effect, as follows: While an appellate court will not substitute its judgment for that of the jury as to credibility of witnesses, the court is concerned with the burden of proof which is imposed on the prosecution to prove that defendant committed the crime. That the testimony of the complaining witness was "punctured" with inconsistencies and contradictions, as to where she parked her car, where the robbery occurred, and the description of the robber. In view of the "laws of probability" the conclusion is inescapable that she could not recognize the robber one and a half blocks away, on a dark street, by his walk and his clothes. Where the identification of the robber depends on the testimony of a single witness, whose testimony is so "punctured," and where the testimony in support of an alibi is strong and impressive, there should be a reversal.

As indicated in appellant's argument, the question as to credibility of witnesses was a question of fact for the determination of the jury. Also, the question as to the weight of the testimony was for the jury to determine. The testimony of one witness, if believed by the trier of facts, is sufficient to support a conviction of robbery. "An identification of an accused by the victim of a robbery is sufficient to support an implied finding that he committed the crime. [Citations.] The identification need not be corroborated by other evidence." (*People* v. *Bishop*, 166 Cal.App.2d 687, 692 [333 P.2d 352].) In the present case the complaining witness identified appellant as the person who committed the robbery. The evidence herein was sufficient to support the verdict.

With reference to appellant's contention regarding "errors," he argues, in effect, as follows: When appellant answered that he had been convicted of a felony, his credibility as a witness was impeached, and the prosecutor should have stopped that line of questioning at that point, and the court should not have allowed him to continue such questioning and bring before the jury two other prior convictions. That after such evidence was received it would be difficult for a juror not to consider the personal history of appellant as evidence that he committed the alleged crime. That the bartender (Drums) who was one of appellant's alibi witnesses was sick and went home without testifying. Also, a checker at the market, who was subpoenaed by appellant, was sent back to work before she could testify that the complaining witness had requested her to point out the husband of Virginia Williams. That one of the offenses, referred to as a felony, was a misdemeanor. That there was collusion among defense counsel, the prosecutor, and the police. That the arrest was made without a warrant and without probable cause. That appellant was sitting in the living room of his home, preparing his income tax return, when he was arrested.

The record on appeal does not show that one of the prior offenses, referred to, was a misdemeanor. The prosecutor was not guilty of misconduct in asking appellant if he had been convicted of more than one felony. The court did not err in receiving the testimony of appellant regarding prior convictions. There is nothing in the record on appeal with respect to any improper conduct on the part of any one in the matter of the two prospective witnesses not remaining to be called to testify. There is nothing in the record with respect to collusion or lack of probable cause.

The judgment and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 12, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 13, 1960.