[Crim. No. 287.   Fifth Dist.   Aug. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ISAIAH SMITH, JR., et al., Defendants and Appellants.

James Raymond Dilling and Tom Okawara, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Craig G. McIntosh, Deputy Attorney General, for Plaintiff and Respondent.

GARGANO, J.—Appellants appeal from judgments of conviction, after jury trial, of robbery in the first degree in violation of Penal Code sections 211 and 211a. Section 211 provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Section 211a provides in part: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, . . . is robbery in the first degree. All other kinds of robbery are of the second degree."

█ Since both appellants have challenged the sufficiency of the evidence to sustain the judgments against them, we shall consider this question first. In doing so, however, we cannot weigh or resolve conflicts in the evidence, nor can we judge the credibility of the witnesses. █ To the contrary, we must assume the existence of every fact which the jury could have reasonably abduced from the evidence (*People* v.

*Newland,* 15 Cal.2d 678 [104 P.2d 778] ). ▮ Moreover, the test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the trier of fact on every essential element (*People* v. *Daugherty,* 40 Cal.2d 876 [256 P.2d 911] ). ▮ In fact, the testimony of a robbery victim (if believed by the trier of fact) is sufficient of itself to warrant a conviction, and no corroborative evidence is required (*People* v. *Williams,* 183 Cal.App. 2d 715 [6 Cal.Rptr. 881] ; *People* v. *McLaine,* 204 Cal.App.2d 96 [22 Cal.Rptr. 72] ; and *People* v. *Sanders,* 217 Cal.App.2d 606 [31 Cal.Rptr. 707] ).

With these appellate principles in mind, we conclude that there is ample evidence in the record to support the jury's verdicts. According to the testimony of the robbery victim, Mr. Patterson, appellants Smith and Williams arrived at his home in Lemoore in Smith's automobile in the early afternoon of March 25, 1966. There it was agreed that Patterson would accompany appellants to San Diego, and that he would share expenses since they would be using Smith's automobile. Smith then drove Patterson to his place of employment where Patterson picked up a check amounting to $63 for wages due. At that time Patterson also had approximately $120 in his possession which represented the balance remaining from wages he had previously collected. Later, in the company of appellants, Patterson went to the Eagle's Bar and cashed his check. He also purchased a fifth of Scotch. From there they drove to a gas station where Patterson purchased $10 worth of gasoline for Smith's automobile and hamburgers which all three of them ate. Afterwards they drove to Patterson's home, picked up some of his belongings and then proceeded to Hanford to the home of Mr. Ragsdale. In Hanford appellants agreed to return in about an hour to pick up Patterson to begin the trip to San Diego when traffic had substantially subsided. Appellants returned as planned, picked up Patterson, and the pretended trip to San Diego commenced. However, Smith proceeded to drive to a place on a rural highway approximately nine miles from Hanford where he stopped the car, ostensibly to check the tires. All three of them got out of the car, and the next thing that Patterson knew he was being clubbed from behind by Smith who knocked him to the ground with the first blow. Patterson then turned over on his back to catch whatever it was that he was being clubbed with, but he could not hold onto it. Smith continued to strike Patterson who recalled being hit three or four times before he lost

consciousness. When Patterson regained consciousness he discovered that his trousers had been removed and that the money which he carried in his pocket and a pocket knife were missing. He then put on a pair of trousers which he found among the three or four pair that were scattered around the road and made his way to a nearby farmhouse. Unfortunately, he could not get anyone to answer his knock so he went out to the barn where he slept the rest of the night. The following morning he returned to the home of Mr. Ragsdale and was ultimately taken to the hospital where he was treated for the severe injuries resulting from his beating.

Alleta Slusher, the nurse on duty at the hospital when Patterson arrived and who assisted in his treatment, testified that his lips were swollen, one eye was bleeding and he had bruises and abrasions on his arms. She also stated that it was necessary for the doctor to remove four teeth that were lying flat inside Patterson's mouth, and to extract four other teeth that were damaged.

Abel Rangel, a farmer, testified that he heard a knock on the door of his farmhouse around 9 p.m. on March 25, 1966. He did not investigate the knock, but the next morning he found blood stains on the steps and blood on some of the bales of hay in his barn. He also found a watch in the barn that belonged to Patterson.

Deputy Sheriff Evers, who responded to the call from Mr. Rangel, testified that he found blood on the highway in front of the Rangel ranch on March 26th. He also observed a plastic cleaner's bag with a clothes hanger still in it on the highway close to where he found the blood. He further testified that he took a knife from appellant Smith's property locker at the jail which was later identified as Patterson's missing knife.

Appellant Smith concedes that there was sufficient evidence to support the jury's verdict of robbery in the second degree. He contends, however, (and this is his sole contention for reversal of his judgment of conviction) that the evidence was insufficient to justify the verdict of robbery in the first degree because the prosecution failed to prove robbery by means of a dangerous or deadly weapon. This contention is without merit.

In the first place, Patterson testified that he was hit from behind on the head with a blow hard enough to knock him to the ground. He further testified he was being "clubbed" and that he turned on his back in order to catch whatever he was being hit with but he "couldn't hold it." Thus, from this

testimony there is substantial evidence that Patterson was beaten with a dangerous or deadly object, even though he did not see it and could not describe it. It is settled that there is no requirement in a first degree robbery case that the weapon used in the crime be produced at the trial (*People* v. *Miller,* 190 Cal.App.2d 361 [11 Cal.Rptr. 920]).

In the second place, when Patterson was examined at the hospital it was evident that he had received a severe beating. His lips were swollen, one eye was bleeding and he had bruises and abrasions on his arms. It was also necessary for the doctor to remove four teeth that were lying flat inside of his mouth ,and to extract four other teeth which were apparently badly damaged. These injuries, when considered in light of Patterson's testimony that he was "clubbed," indicate that Patterson was hit with a heavy instrument or kicked in the face with a shod foot. In *People* v. *Costa,* 218 Cal.App.2d 310, 315 [32 Cal.Rptr. 374], the victim also did not see the weapon with which he was struck, but the court in upholding a conviction of robbery in the first degree stated: "In the present case there was direct evidence that defendant committed the assault. As above stated, Johnson testified that defendant slugged him on the head with something hard that made a sharp knock and rendered him unconscious, that the injuries he received from the slugging required stitching in two places, and that his jaw was swollen and his false teeth were broken. That testimony may properly be classified as direct evidence that the assault was with a dangerous or deadly weapon." And in *People* v. *Bennett,* 208 Cal.App.2d 317, 320 [25 Cal.Rptr. 257], the court said: "In the determination of whether an instrument not inherently deadly or dangerous assumes such characteristics, recourse may be had to the nature of the object or instrument, the manner of its use, the location on the body of injuries inflicted, and the extent of such injuries. (*People* v. *Russell,* 59 Cal.App.2d 660 [139 P.2d 661].) Thus it has been held that a shod foot, although not a weapon in the strict sense, is capable under the above rule of being used as such. (*People* v. *Wood,* 192 Cal. App.2d 393 [13 CalRptr. 339].)"

In the third place, Alleta Slusher was a nurse employed at Kings County Hospital for 24 years and had seen a great many cases similar to Patterson's; she testified that from the appearance of Patterson's wounds she concluded that a heavy, blunt instrument was used to inflict the wounds. Although it is arguable that a proper foundation was not laid

by the prosecutor to qualify the witness as an expert, no objection was made on this ground and the objection was waived (*Ah Tong* v. *Earle Fruit Co.*, 112 Cal. 679 [45 P. 7]; *People* v. *Lopez*, 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Peterson*, 251 Cal.App.2d 676 [59 Cal.Rptr. 694]).[1]

In support of his position that the evidence was insufficient to justify the verdict against him, appellant Williams first contends that there is no showing that Patterson had any money on his person when he was beaten and allegedly robbed. In other words, he argues that although Patterson had money on him when he was dropped off in Hanford around 6 p.m., there is no showing what happened to the money thereafter. According to Patterson, however, he had approximately $185 in his possession after he cashed his check at the Eagle's Bar. He then spent a small part of this money for the purchase of Scotch, gasoline and hamburgers. And, Patterson added that during the short period when he was not with appellants after they dropped him off in Hanford, he was shooting dice and won some money which he put in his pocket. Finally, he testified that he remembered that he had his wallet with him when he left Hanford with the appellants. Hence, the question as to whether Patterson had money in his possession when he was robbed was a question of fact to be determined by the jury, and its determination against defendants cannot be disturbed on appeal.

Williams next contends that the evidence fails to show that he was an aider and abettor of appellant Smith in the commission of the robbery. This contention is also without merit. Williams was with Smith when Patterson cashed his check and knew that he had received at least $65 in cash. He also apparently knew that Patterson thought he was going on a trip to San Diego when in fact this was not the case. At the scene of the robbery he stood idly by and did nothing while Smith rendered Patterson unconscious. In fact, Patterson recalled that shortly before he lost consciousness Williams told Smith, "don't take all of that." Finally, after the beating had been administered by Smith, Williams departed (apparently with Smith), leaving Patterson alone and bleed-

---

[1]Defendants initially objected to the question asked of the witness Alleta Slusher on the ground that it was leading. The objection was sustained by the court and rephrased by the prosecutor. Thereafter, the witness was permitted to answer without further objection.

ing on the side of the road. Consequently, from this circumstantial evidence the jury could properly conclude that Williams was an aider and abettor and equally guilty with Smith as a principal to the crime of first degree robbery under Penal Code section 31. This section provides: ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed.''

Having determined that there is substantial evidence to justify the jury's verdicts against both defendants, we shall direct our attention to appellant Williams' remaining contentions for reversal. ■ First, he argues that the statement which he made to Deputy Sheriff Evers after the crime was committed was improperly admitted into evidence because the prosecutor failed to show that he had been advised of his rights before he made the statement, as required by *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He admits that the statement was admitted into evidence without objection, but asserts that the court should have intervened to protect his constitutional rights. Appellant's contention is devoid of merit. The trial commenced May 24, 1966, more than one year after *Dorado*, and appellant's failure to object precludes his raising the *Dorado* rule for the first time on appeal (*People* v. *Valdez*, 239 Cal.App.2d 459 [48 Cal.Rptr. 840]). Moreover, the *Miranda* rule is not retroactive and is available only to one whose trial began after June 13, 1966 (*Johnson* v. *New Jersey*, 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772] ; *People* v. *Rollins*, 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]).

■ In any event, even if it is assumed *arguendo* that the statement was improperly admitted, we do not believe that an automatic reversal is required. To the contrary, we conclude that there is no reasonable possibility that a result more favorable to the defendant would have been reached if the statement had not been admitted (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]). This follows because appellant's statement was primarily exculpatory for he denied any knowledge of the robbery and stated that the last time he saw Patterson on March 25, 1966, was when appellants left him off in Hanford sometime after 6 p.m. Moreover,

although he also admitted being with Patterson and appellant Smith during the afternoon hours of March 25th, this was not disputed. Appellant Smith fully corroborated Patterson's version of the afternoon happenings up to the time that Patterson was taken to Hanford around 6 p.m.

Williams' remaining contention is that the court committed prejudicial error in not providing a different attorney for each appellant, and in not ordering a severance of the trial. In fact, his counsel (who did not try the case) even suggests that this is probably the reason that Willaams did not testify on his own behalf. Significantly, however, if a conflict of interest actually existed between the appellants the conflict was not apparent to the trial court. To the contrary, as we have already indicated, Williams denied that he knew anything about the robbery, and stated that the last time he saw Patterson on March 25, 1966, was when the appellants left him off in Hanford. Appellant Smith also told Deputy Sheriff Evers that he knew nothing about the robbery, and testified that the last time he saw Mr. Patterson was when he left him off in Hanford about 6 p.m. Hence, the court could properly conclude that the defenses of both appellants were identical and that there was no conflict of interest. Furthermore, appellant Williams did not move the court for a severance of the trial, nor did he request his own separate counsel. It is settled that it is permissible for one attorney to represent more than one defendant if the defendants make no objection. Consequently, in the absence of a request for separate counsel an objection to joint representation may not be heard for the first time on appeal (*People* v. *Winkelspecht,* 237 Cal.App.2d 227 [46 Cal.Rptr. 697] ; *People* v. *Welch,* 212 Cal.App.2d 397 [28 Cal.Rptr. 112] ). It is also settled that the right to a separate trial may be waived by a failure to object to a joint trial (*People* v. *Stadnick,* 207 Cal.App.2d 767 [25 Cal.Rptr. 30, 99 A.L.R.2d 766] ). In fact, it has even been stated that a motion for a severance must be decided upon a showing made at the time when the motion is argued and not upon what may occur thereafter at the trial (*People* v. *Terrell,* 138 Cal.App.2d 35 [291 P.2d 155] ).

The judgments are affirmed.

Conley, P. J., and Stone, J., concurred.