[Crim. No. 14838. Second Dist., Div. One. Nov. 14, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD DEAN WILSON, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert T. Jacobs, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery. (§ 211, Pen. Code.)

In an information filed in Los Angeles on November 30, 1967, Gerald Dean Wilson and Harold Goodwin were charged with taking feloniously and by means of force, certain personal property from Alfred Knuth on November 15, 1967. Each of the defendants pleaded not guilty and it was stipulated that the cause be submitted upon the testimony and the exhibits received at the preliminary hearing. Each defendant was found to be guilty as charged and the robbery was found to be of the first degree. Wilson was sentenced to the state prison and a timely notice of appeal was filed.

A résumé of some of the facts is as follows: Alfred Knuth on November 15, 1967, was tending bar at "Sid's Well" in Monterey Park. Defendants were in the bar from about 11:30 p.m. until closing time at 2 a.m. Knuth served some drinks during this period to defendants. At one time during such period Knuth overheard Goodwin say to appellant, "Keep it in your pocket." At about 2:05 a.m. appellant took a gun from his pocket and handed it to Goodwin. Goodwin then stated to Knuth, "This is it." and appellant walked behind the bar and took about $125, including a roll of nickels from the cash register and put the money into his pocket. The robbers then left the premises.

Officer Sparling of the Monterey Police Department was on patrol and shortly thereafter he received a radio message from the police station to the effect that an armed robbery had just been committed at the named bar. A few moments later a description of the two suspects and of the vehicle they were driving was broadcast. One suspect was described as being about 40 years of age, with light hair and about 6 feet 1 inch or more tall. The other suspect was described as having dark hair, as about 5 feet 6 inches or more in height and of about 35 to 40 years of age. It was further broadcasted that one of the suspects was wearing a blue sweater. It was first indicated in the radio report that the suspects were driving a blue pickup truck with a camper on it. Shortly afterward it was stated over the radio that the truck apparently was not blue but was yellow with a camper. Within ten minutes after receiving the call over the police radio, Sparling spotted a

vehicle parked in an unopened service station about nine blocks from the scene of the robbery. The vehicle was a yellow pickup truck with a camper on it. Sparling approached the truck, looked inside on the driver's side and saw two men about 35 or 40 years of age. The driver of the pickup immediately drove out of the station and into the street. The officer followed in the police car and with the red lights on pulled the truck to a stop. Sparling approached the pickup again and asked the driver for his driver's license. The driver stated that he had an expired license and was looking for it. The officer noted that appellant, the passenger in the truck, had on a blue sweater and was tall. Sparling asked the driver to step out of the car and then conducted a pat-down search for weapons and found none. The officer then asked appellant to get out of the truck. Appellant identified himself as Mr. Osterly and exhibited a driver's license with that name on it. Sparling made a pat-down search of appellant for weapons and in doing so felt several hard objects on appellant's right front pocket area which the officer thought to be coins and on appellant's left front pocket the officer felt what seemed to be a large roll of paper. Defendants were then placed under arrest. Assisting officers arrived and took charge of defendants while Sparling searched the truck. Under the front seat was found a box containing a leather holster, some cartridges and leather gloves. A loaded pistol was located in the glove compartment. A bag of money, including a roll of nickels was found in appellant's right front pocket and some currency was found in his left front pocket. Defendants again were told that they were under arrest and were advised of all of their constitutional rights. Each defendant indicated that he understood his rights.

▆▆▆▆ Appellant now contends that he was improperly denied his right to separate counsel at the trial and that he was ineffectively represented. The contentions are without merit.

Appellant made no objection to the joint representation prior to or during the trial or at any other proceeding prior to the filing of his brief in this court. ▆▆▆ In *People* v. *Hamilton* *(Cal.App.) 70 Cal.Rptr. 58, 64, it is appropriately stated: "It is well settled that in the usual codefendant trial the objection to joint representation must be made at the outset of the case and may not be heard for the first time on appeal. [Citations.]

*A hearing was granted by the Supreme Court on September 5, 1968. The final opinion of that court is reported in 71 Cal.2d—— [77 Cal.Rptr. 785, 454 P.2d 68].

"Defendants' reliance on *People v. Keesee*, 250 Cal.App.2d 794 [58 Cal.Rptr. 780], is misplaced. In *Keesee*, defense counsel virtually conceded the guilt of one of the defendants in arguing that the other defendant should be acquitted. The court held that under such circumstances the defendant whose guilt had been conceded had been denied his right to effective assistance of counsel. No such deprivation occurred in the case at bench.

 "Separate and individual counsel is not mandatory in every case where there is more than one defendant. There must exist an actual or potential conflict of interest and the trial court must be so advised. [Citations.]"* (Cal.App.) 70 Cal.Rptr. 58, 64.) (See also *People v. Smith*, 253 Cal.App.2d 299, 306 [61 Cal.Rptr. 457]; *People v. Wilkins*, 251 Cal.App. 2d 823, 826 [60 Cal.Rptr. 49]; *People v. Winkelspecht*, 237 Cal.App.2d 227, 230 [46 Cal.Rptr. 697]; and *People v. Byrd*, 228 Cal.App.2d 646, 650 [39 Cal.Rptr. 644].)

In *People v. Odom*, 236 Cal.App.2d 876, 878-879 [46 Cal. Rptr. 453], it is set forth: "The mere fact that a single attorney is appointed to represent multiple defendants does not mean that an individual defendant has been deprived of his right to counsel. [Citations.] Only if an actual or potential conflict of interest exists among codefendants and a motion for appointment of separate counsel is made in timely fashion, is it incumbent upon the trial court to appoint separate counsel. [Citations.] Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another (*People v. Kerfoot*, 184 Cal.App.2d 622 [7 Cal.Rptr. 674]); when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another (*People v. Donohoe*, 200 Cal.App.2d 17 [19 Cal.Rptr. 454]); when one defendant has a record of prior felony convictions and the others do not (*People v. Douglas*, 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]); when the defenses of codefendants are factually inconsistent (*People v. Welch*, 212 Cal.App.2d 397 [28 Cal.Rptr. 112]); or when appointed counsel believes a conflict of interest may exist (*People v. Douglas, supra; People v. Donohoe, supra*).
. . .
"Essentially defendant rests his argument on the broad proposition that in any case where there are multiple defendants, each is entitled to separate counsel if he demands it. He

---

.· *A hearing was granted by the Supreme Court on September· 5, 1968. The final opinion of that court is reported in 71 Cal.2d—— [77 Cal.Rptr. 785, 454 P.2d 68].

cites such cases as [citations]. None of these cases goes so far as to hold that a defendant is entitled to demand the appointment of separate counsel where the court has no reason to believe that separate counsel would be of any advantage to him. Indeed several recent cases have held that in collateral proceedings counsel need not be appointed at all if no likelihood of benefit has been made out. In *People v. Shipman,* 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993], the court stated that appointment of counsel was not required in coram nobis proceedings unless the indigent defendant stated facts sufficient to satisfy the court that a hearing was required. 'These standards may preclude absolute equality to the indigent, but, . . . absolute equality is not required; only "invidious discrimination" denies equal protection.' See also *In re Nunez,* 62 Cal.2d 234 [42 Cal.Rptr. 6, 397 P.2d 998]."

In this case we discern no possible advantage to either defendant in having separate counsel, there is so far as the record indicates no conflict of interest or probable conflict of interest between the two defendants. Here both defendants were clearly and unequivocally participants in the robbery, appellant furnished the gun to his codefendant and then emptied the cash register and put the money into his pants pockets, both were found very shortly after the robbery, the money taken was found in appellant's pants pockets and the gun used was found in the glove compartment of the pickup truck.

Appellant also asserts that he was not effectively represented by counsel at the trial. The trial was not reduced to a farce or a sham. (See *People v. Hughes,* 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33]; *People v. Wein,* 50 Cal.2d 383, 410 [326 P.2d 457]; *People v. Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Appellant has the burden of showing or proving the ineffectiveness of counsel, not as a matter of speculation but as a demonstrable reality. (*People v. Crooker,* 47 Cal.2d 348, 353 [303 P.2d 753]; *People v. Robillard,* 55 Cal.2d 88, 99 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)

The facts of this case indicate clearly the correctness of what is said in *People v. Garrison,* 246 Cal.App.2d 343, at pp. 350-351 [54 Cal.Rptr. 731], with reference to the subject matter of second guessing trial counsel: "The choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. Ordinarily the tactical decisions of trial counsel will not be reviewed with the hind-

sight of an appellate court. [Citations.] The decisions which counsel must make in the courtroom will necessarily depend in part upon what he then knows about the case, including what his own client has told him. There may be considerations not shown by the record, which could never be communicated to the reviewing court as a basis for its decision. Thus, the appellate court's inability to understand why counsel did as he did cannot be a basis for inferring that he was wrong.''

Beyond doubt appellant in this case would not have benefited from anything which was not done for him or otherwise.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1969.