[Crim. No. 4910.   Third Dist.   Mar. 14, 1969.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  GEORGE
TRAVIS CANNEDY et al., Defendants and Appellants.

John Beede, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendants Travis and Timothy Cannedy[1] appeal from judgment of conviction after jury verdict of the felonies hereinafter set forth.

QUESTIONS PRESENTED:

1. Should the court have instructed on lesser included offenses?

2. Alleged error in admitting evidence of telephone calls by the probation officer.

3. Should all three defendants have been represented by one attorney?

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Because of the similarity of their names, George Travis Cannedy will be referred to herein as Travis and George Timothy Cannedy will be referred to as Timothy.

4. Alleged prejudicial misconduct of prosecutor.

Defendants Travis and Timothy and Michael Wayne Cannedy were charged: count one, violation of section 243 of the Penal Code (battery against a peace officer known to be engaged in the performance of his duties); count two, violation of section 245 of the Penal Code (assault with a deadly weapon upon a peace officer known to be engaged in the performance of his duties). Defendant Travis was charged in count three with the additional related offense of violation of section 243 of the Penal Code (battery upon a police officer), and in count four with the separate offense of violation of section 243 of the Penal Code (battery upon a police officer, Highway Patrol Officer Louis LaBonte).[2]

Travis was found not guilty of count one, but guilty of the offenses charged in counts two, three and four. Timothy was found not guilty of the offense charged in count one, but guilty of the offense charged in count two. Michael Wayne Cannedy was found not guilty of the offense charged in count two, but guilty of the offense charged in count one. Michael has not appealed.

Motions by Travis and Timothy for new trial and probation were denied. Travis was sentenced to the prison terms prescribed for the offenses charged in counts two, three and four, the sentences to run concurrently. Timothy was sentenced to the prison term prescribed for violation of count two. Imposition as to sentence for Michael was suspended, and he was placed on probation for four years.

EVIDENCE:

Defendant Travis is the father of defendant Timothy and of Michael Wayne Cannedy.[3] At about 5:40 p.m., California Highway Patrol Officer Wendorff saw Timothy driving a station wagon the wrong way down a one-way street in Sacramento County. When the officer gave chase the vehicle started accelerating. The officer turned on his siren and red light. After a few blocks the car stopped. The driver, Timothy, jumped out and started to run across the street and the lawn towards the front door of a house. To cut Timothy off the officer drove his motorcycle across the lawn, halting it on a walkway near the door. Timothy wore no shoes or shirt. When asked why he was trying to get away, Timothy said "he

---

[2]Timothy was charged with a prior felony conviction for assault with a deadly weapon, which charge he admitted.

[3]Michael was convicted of one count of battery upon a peace officer. He did not appeal.

wasn't," that he had butter for which the family was waiting their dinner. On asking for his driver's license, Timothy said he did not have one but later produced one. By this time, Travis and his wife Dorothy had come out of the house. Dorothy interrupted the officer's questioning, asked why Timothy had been stopped and insisted that the officer get his motorcycle off the property. The officer moved it to the street. After being asked repeatedly to come where the officer was Timothy finally did. Wendorff then informed Timothy that because it appeared that he was attempting to evade arrest the officer was going to run a record check on him. The officer radioed for one but was asked to stand by since the records group was busy. Timothy, who testified at the trial that he knew there was a warrant out for him (he was on probation) and did not want to go to jail without a shirt, asked if he could go in and get a shirt. Wendorff told him that he would have to remain until the report came and the arrest was completed but a member of the family could get the shirt.

Travis then told Timothy to go on into the house and that the officer was not going to stop him. Wendorff told Travis that he was interfering with a lawful arrest and that any interference would result in his arrest. Travis then told Timothy to go in and that if the officer tried to stop him, Travis would stop the officer. Wendorff again warned Travis that he was making an arrest and that any interference would be a charge against him, too. Travis said he would like to see Wendorff try to arrest him. Travis and Timothy started for the house, and Wendorff radioed for assistance. Wendorff told Travis to get Timothy back outside, and Travis told Wendorff to get off his property. Wendorff again told Travis that he was making a lawful arrest and that he had the right to go in and get Timothy and asked Travis to bring Timothy out. Travis again refused and Wendorff started in the house.

Travis tried to grab Wendorff, but he pushed by and into the house. As he went for Timothy, Wendorff was jumped from behind by Travis. As Wendorff fell he saw Timothy and Michael advancing towards him. He was beaten and kicked by the three. (Wendorff never actually saw Michael hit him, but was sure that he had.) Travis, clinging to the officer's back, yelled, "Get him. Get him." Timothy broke a child's small wooden chair over Wendorff's shoulder. As Wendorff was trying to arise Travis hit him in the face, saying "Come on, big boy, come and get some more. I can whip you. You're not so big and you're not so tough." There was more fighting, and

Wendorff was able to retreat out to his motorcycle to make another call for assistance. His helmet had been torn off, his uniform was torn and he was bleeding.

After he made his call, Wendorff, still hoping to take Timothy, took his baton and went back into the house, having to go around to the back door. He entered the kitchen and asked for Timothy. Travis told Wendorff he had no right to be in the house. Wendorff looked around a little but could not find Timothy. Timothy had fled and was arrested later. Wendorff then told Travis and Michael that they were under arrest for their earlier interference. He started to handcuff Michael and was again attacked by Travis. (Travis and other defense witnesses testified that Wendorff came in the back door and immediately struck Travis in the back of the head with his baton. Their testimony is probably the reason the trial judge gave the jury a simple battery instruction on count three concerning his second fight.) Wendorff and Travis wrestled, and Michael picked up Wendorff's dropped baton. Wendorff freed himself from Travis and drew his gun. Other officers arrived just then.

After talking to other officers outside, Wendorff went back into the house and helped arrest Travis. Travis struggled and injured Officer LaBonte. It took four officers to subdue Travis.

1. Included offenses.

Defendants' theory at the trial was that because Officer Wendorff entered the house, the knowledge that he was a peace officer engaged in the performance of his duties required by section 245, subdivision (b), of the Penal Code was not present. Therefore, they contend that the jury should have been instructed on crimes that did not include the knowledge element. Thus, they requested that the jury be instructed that it could return convictions of: (1) simple battery, as a misdemeanor included in the charge in count one of battery upon a peace officer; (2) simple assault, as a misdemeanor included in the charge in count two of assault upon a peace officer by means likely to produce great bodily harm; (3) simple battery, as a misdemeanor included in count three of battery upon a police officer; and (4) simple battery, as a misdemeanor included in count four of battery upon a police officer. The only one of these instructions which was given was (3) relating to Travis' struggle with Officer Wendorff after the officer's re-entry.

Although admitting that the law, which at one time held that one might resist an unlawful arrest, has been changed

and that a person knowing, or who should have known, that he is being arrested by a peace officer, has the duty of refraining from using force to resist such arrest, defendants seem to contend that Officer Wendorff was making an illegal arrest and that defendants, therefore, had the right to resist.

Defendants had no right to resist Officer Wendorff. (Pen. Code, § 834a.)[4] *People* v. *Burns* (1961) 198 Cal.App.2d Supp. 839, 841 [18 Cal.Rptr. 921], applies even to an unlawful arrest. The privilege of resistance to an illegal arrest is no longer the law in California. (*People* v. *Coffey* (1967) 67 Cal.2d 204, 221, fn. 18 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33].)

Only the identity of the victim distinguishes simple battery from battery upon a police officer. Simple assault is distinguished from the aggravated assault charged in this case both by the identity of the victim and by the more dangerous nature of the threat. So, in order to justify the simple battery instruction the evidence need only show that defendants' theory about the officer losing his standing as a peace officer is correct, but to justify the simple assault instruction the evidence must show that theory and that the assault was not by force likely to produce great bodily injury.

█ Defendants contend that Officer Wendorff lost his standing as a peace officer engaged in the performance of his duties, apparently because he followed Timothy into the house. Defendants admitted that they knew that Officer Wendorff had detained Timothy for a traffic infraction, that the officer was running a record check on him, that he ordered Timothy to remain with him, that he was not to go into the house, and that Timothy, under instructions of Travis, ignored the officer's orders and went into the house with the officer in pursuit. There can be no question but that under the circumstances Wendorff had the right to pursue Timothy into the house. Defendants cite no authority to the contrary, and the officers were acting in the performance of their duties in arresting Travis and Michael for their interference. Thus, as a matter of law neither defendant could rely on his own erroneous interpretation of the law, and hence the assault committed upon the officer could not be simple assault. █ When a

---

[4]Section 834a (duty of person to refrain from using force or weapon to resist arrest): "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest."

person intentionally does an act which the law declares to be a crime, he is acting with criminal intent, even though he may not know that his act or conduct is unlawful. (*People* v. *Butcher,* 174 Cal.App.2d 722 [345 P.2d 127].)

The recent case of *People* v. *Curtis, supra,* 70 Cal.2d at page 357, holds, "construing sections 834a and 243, it is now the law of California that a person may not use force to resist any arrest, lawful or unlawful, except that he may use reasonable force to defend life and limb against excessive force; but if it should be determined that resistance was not thus justified, the felony provisions of section 243 apply when the arrest is lawful, and if the arrest is determined to be unlawful the defendant may be convicted only of a misdemeanor."

■ In the case at bench, as we have pointed out, the arrests were lawful and the officers did not use excessive force. The excessive force was all on the side of defendants. Hence, the actions of defendants could not have been found to be misdemeanor batteries or assaults, and the trial court did not err in refusing to determine that these misdemeanors were lesser offenses included in the felonies charged.

2. Admission of telephone calls.

Travis testified that he did not know that his son Timothy was wanted by the authorities prior to the incident in question, although he knew that Timothy was on probation. Sacramento County Probation Officer Craft, appearing as a rebuttal witness, testified that he had been Timothy's probation officer for five years, that during the last year and a half, Timothy's whereabouts were unknown to him, and that he had tried to locate Timothy. One of the phone numbers listed on Timothy's reports was that of his employer, whom Officer Craft believed was Travis, Timothy's father. The first two times that Craft had called that number he talked with a woman who identified herself as Timothy's mother.

In October or November 1966 he again called the number and a man answered, identifying himself as Timothy's father. Craft inquired where Timothy was. On again calling that number on December 17, Mrs. Cannedy answered. He asked if Timothy were there or if anyone knew his whereabouts. Craft then informed her that Timothy had not reported since October and unless he reported Craft would be forced to file a probation violation. Defendants contend that testimony concerning the calls was inadmissible because of lack of adequate proof of the identity of the persons answering the calls.

■ ". . . The general rule . . . is that where it is shown

that the witness called up the other party at his place of business, through the central station with which both were connected, and received a response as in the usual course of business over the telephone, this is sufficient *prima facie* identification of the speaker at the other end of the line as the party called. . . . [T]he weight of such evidence depends largely upon the circumstances of each case and is always a question for the trial court or jury." (*Union Constr. Co.* v. *Western Union Tel. Co.* (1912) 163 Cal. 298, 308 [125 P. 242].)

In *People* v. *Horace* (1954) 127 Cal.App.2d 366 [273 P.2d 923], a prospective witness gave the prosecution a telephone number. The call to that number was answered by a man who identified himself as the witness and then admitted his knowledge of the subject matter. Over objection of insufficient foundation of the answering person's identity and of hearsay, the conversation was admitted. The reviewing court held it properly admitted, saying that the identity of the person may be established by proof of recognition of the voice " 'or by circumstances which satisfactorily indicate the identity of the individual.' " (P. 369.) (To the same effect *People* v. *Lorraine,* 28 Cal.App.2d 50, 54 [81 P.2d 1004]; *Eastman* v. *Means,* 75 Cal.App. 537 [242 P. 1089]; *People* v. *King* (1963) 218 Cal.App.2d 602, 610 [32 Cal.Rptr. 479].)

The fact that Travis knew that his son Timothy was being sought by his probation officer was relevant as bearing on Travis, knowing what the result of the officer's checkup call would be and his desire to get Timothy out of the presence of Officer Wendorff before the latter's request to the police office for information as to whether Timothy was wanted could be answered, and further to show that in arresting Timothy on the motor vehicle charge and in detaining Timothy until that information was obtained, the officer was acting in the performance of his duty. It would also supply a motive for attacking the officer in the home, to allow Timothy to escape.

3. Representation of all defendants by one attorney.

Although the defendants were represented by an attorney of their own choosing and at no time during the trial indicated any dissatisfaction with his actions nor indicated in any way any conflict of interest in his representing all three, they now contend that there was a conflict of interest in his representation of them.

"Separate and individual counsel is not mandatory in every case where there is more than one defendant. There must exist an actual or potential conflict of interest, and *the*

*trial court must be so advised."* (Italics added.) (*People* v. *Hamilton,* *(Cal.App.) 70 Cal.Rptr. 58.) ██ "[I]n the absence of a request for separate counsel an objection to joint representation may not be heard for the first time on appeal." (*People* v. *Smith* (1967) 253 Cal.App.2d 299, 307 [61 Cal.Rptr. 457].)

██ Actually, the defenses of all three defendants were complimentary in nature and not conflicting. All three advanced the erroneous legal theory that Officer Wendorff did not have the right to enter the Cannedy home and thus his actions were not within the reasonable performance of his duties and hence their resistance was justified. Additionally, Travis claimed that the officer initiated all the violence; that he was struck over the head by the officer's baton and was unable to remember anything until he found himself striking the officer with his fists; and that when he realized what he was doing he desisted. He did not see either of his co-defendants strike the officer. Timothy admitted knowing that there was an outstanding warrant for his arrest but denied telling his family that there was such. He admitted striking the officer with the child's chair but in all other respects concurred in Travis' version of the affair. Michael denied any active involvement in the altercation or seeing Timothy have any physical contact with the officer. He did not see Travis attack Officer LaBonte and concurred in Travis' version of the affair. Thus, the testimony of none of the defendants hurt none of the others and was favorable to each other. No reason existed for a counsel to attack the credibility of any of the defendants nor to be restricted in argument. Timothy's prior conviction could not have prejudiced the others.

4. Alleged misconduct.

██ On cross-examination of Travis the prosecutor asked him if later in the evening of the affair he had not engaged in an altercation with a peace officer at the county jail. Defendants objected and cited the question as prejudicial misconduct. The prosecutor stated: "This is going directly to the injuries" Travis claimed that he received at his home. Evidence would be admissible if any of Travis' injuries which were not detected until his doctor examined him some six days later were received other than in the affair with Officer Wendorff. On the question of his good faith, the prosecutor stated

---

*A hearing was granted by the Supreme Court on September 5, 1968. The opinion of that court is reported in 71 Cal.2d —— [77 Cal.Rptr. 785, 454 P.2d 681].

that he had received information from Officer Wendorff, who had been advised of it by jail personnel, concerning an affair at the county jail in which Travis was alleged to have been involved, and although he did not know which particular witness he would call if Travis denied the incident, he had not anticipated that there would be any problem in the matter. The court then stated that the subject of inquiry was a proper one, but it was questionable whether on the basis of the information the prosecutor had he should be permitted to go into it. The court then ruled that the prosecutor could not go into the subject until he got further information. The court admonished the jury to disregard the question of any implications that might be drawn from it and that they must not infer from the asking of the question that any fact suggested by the question existed.

The question should not have been asked based upon the limited information the prosecutor then had. However, it cannot be held that it was asked in bad faith. In any event, as the jury were promptly and adequately admonished, it could not have been prejudicial. It must be assumed that the jury heeded the admonition. (*People* v. *Ney* (1965) 238 Cal.App.2d 785, 801 [48 Cal.Rptr. 265].)

The guilt of Travis of the offenses charged was clearly established by the testimony of Officers Wendorff and LaBonte and the independent witnesses, Mrs. Allen and Mary Seaman. The testimony of Travis concerning his injuries was discredited by the testimony of Dr. Marshall. The evidence in this case was not so closely balanced as to present doubt as to Travis' guilt. In no event could the asking of the question have contributed to the verdict.

Judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.