[Crim. No. 746. Fifth Dist. May 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR RAY JONES, Defendant and Appellant.

## COUNSEL

Roslyn Robbins Dienstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COAKLEY, J.**—A jury found the appellant guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245). He was found not guilty on charges of (1) assault with a deadly weapon, to wit, an iron bar, and (2) possession of a deadly weapon, to wit, a billy. The appellant appeals from the judgment sentencing him to prison. As grounds for appeal, he urges misconduct of the deputy district attorney in his closing argument, and the aggravation of such misconduct by an alleged prejudicial statement of a prosecution witness. He contends that the combined effect of the misconduct and of the prejudicial statement deprived him of a fair trial in violation of his constitutional rights. Appellant does not question the sufficiency of the evidence to sustain the conviction, other than to contend that but for the alleged misconduct of the prosecutor he might only have been convicted of simple assault. To dispute the sufficiency of the evidence would be futile in light of the undisputed testimony describing the totally unprovoked and vicious attack by the appellant.

The appellant and Richard Yegan were strangers to each other, except for a few words about motorcycles at a park earlier that evening. The appellant first trailed, then passed, then trailed, then passed Yegan's motorcycle two or three times after Yegan and his girl friend left the park on his motorcycle. The appellant and three companions were riding in an automobile. Yegan drove his motorcycle into a service station for gasoline.

As he was about to start his motorcycle to depart, appellant's car passed the service station, slowed down, turned around, and came back and parked. Three of the occupants, including the appellant, got out of the car and ran to the service station. When Yegan refused the appellant's command to get off his motorcycle, the appellant hit him on the head with an unopened beer can. Yegan dropped his motorcycle and ran toward the office and lube area of the service station; the appellant was in pursuit with a metal bar in hand. Yegan grabbed a tool and started out of the lube room, then dropped the tool and ran from the appellant, who threw the metal bar at him from a distance of 12 feet or more, hitting him in the back of the right calf.

Yegan was taken to the hospital in an ambulance where seven or eight stitches were made in his head and 13 or 14 stitches in his right calf. He was unable to walk without crutches for approximately two and one-half weeks, and was off work for seven weeks.

Yegan and his girl friend were accompanied from the park to the service station by two other motorcyclists and one other girl. While the appellant was attacking Yegan, appellant's two companions, with large wrenches in their hands, were chasing the other motorcyclists. One of the appellant's companions pushed one of the girls down and "kicked her a couple of times." The appellant ordered his companions to desist from hitting the girls. The two individuals with the wrenches then began hitting the motorcycles belonging to Yegan's friends. Yegan and his friends testified that the attacks were unprovoked. Neither the appellant nor his companions testified.

Appellant's opening brief correctly summarizes the alleged prejudicial remarks of the prosecuting attorney:

"In his closing rebuttal, the deputy district attorney stated:

"1. Defendant's behavior is consistent with 'animalistic tendencies.'

"2. Defendant's behavior is consistent with 'felonious tendencies.'

"3. The defendant had a strange, twisted reason for his behavior.

"4. Defendant has 'got a thing' against anyone driving a motorcycle with his girl friend and friends.

"5. Defendant reacts and reacts very seriously to anyone driving a motorcycle with his girl friend and friends.

"6. Defendant doesn't need any reason to do the things he did.

"7. The jury should consider defendant's motive and purpose."

In addition to the remarks summarized above, the prosecutor went further and said: "Now, just a minute. Now, I want you to think, if your son happens to get the idea of buying a Triumph or a BSA or a Harley Davidson or anything, and wants to go out with his girl friend and friends and drive around, make sure, Ladies and Gentlemen, that he doesn't go in an area where this defendant is located, because apparently he's got a thing against this sort of thing, and he reacts and he reacts very seriously."

We recognize that prosecutors, like all others who have responsible roles in the trial of a criminal case, are human; as humans they may be affected by the tensions of a trial to the point of error and, on occasion, even to misconduct. We recognize, too, that the great increase in crime and the corresponding increase in the number of prosecutions in recent years has placed a heavy burden on district attorneys, who frequently must rely on inexperienced deputies to try cases. Be that as it may, prosecutors should be ever aware that in all they do and say they are representatives of the government of whom the public, including those who are prosecuted, are entitled to expect a high degree of ethical conduct.

■ With this preliminary observation, we first consider items 1 through 7, *supra,* of the alleged misconduct. The argument in this case is not a model to be recommended as a guide for prosecutors. And, while some of the references to the appellant, more particularly, "animalistic tendencies" and "felonious tendencies," were quite strong, we hold that, *under the facts of this case,* they were within the bounds of legitimate argument and did not constitute misconduct.

The attack on Richard Yegan was indeed felonious and consistent with animalistic tendencies, i.e., pursuit and vicious attack without provocation. Since the attack was unprovoked and patently premeditated, it did, indeed, indicate that the appellant had a "strange, twisted reason for his behavior," that he "has 'got a thing' against anyone driving a motorcycle with his girl friend and friends," and "reacts very seriously to anyone driving a motorcycle with his girl friend and friends."

Equally true is the statement that appellant did not need a reason to do what he did. If the appellant had a reason or explanation for the attack, e.g., provocation, he failed to place it before the jury, through his own testimony, that of his companions, or of others who witnessed the attack.

Finally, the jury was entitled to consider appellant's motive and purpose.

The court in *People v. Ross,* 178 Cal.App.2d 801, 808 [3 Cal.Rptr. 170], rejected the appellant's contention of misconduct in the prosecutor's statement that, "If the testimony is true, he's got the sexual appetite of a barbarian or an ape," and that defendant was "a very strange man indeed."

In *People* v. *Beivelman,* 70 Cal.2d 60, 76-77 [73 Cal.Rptr. 521, 447 P.2d 913], the court observed that: " 'The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury.' "

■■■ The prosecutor's remarks to the effect that the sons of the jurors and their girl friends dare not ride motorcycles into an area where the appellant is located, because he reacts seriously, were patently uncalled for, were a crude appeal to the fears and emotions of the jurors, and constituted misconduct. If the issue of guilt or innocence in this case was a close one on the facts, a reversal would be required. But the evidence of appellant's felonious attack on innocent persons, minding their own business, is so overwhelming and gross that a verdict of anything less than assault by means of force likely to produce great bodily injury, as returned by the jury, would have been a dereliction of its duty. Indeed, the uncontradicted evidence, the iron bar which pierced the victim's leg one and one-half inches and produced the injuries received by him, would, in our opinion, have justified a verdict of assault with a deadly weapon.

The cases relied on by the appellant are clearly distinguishable from the facts of this case. In most, the court noted that the evidence of guilt was "weak" or that the case was a "close" one on the issue of guilt, and that the misconduct of the prosecutor served to tip the scales in favor of conviction.[1] This is not our case. Here, the evidence of guilt is conclusive, and we do not believe that the prosecutor's remarks affected the outcome.

---

[1]In *People* v. *Vienne,* 142 Cal.App.2d 172 [297 P.2d 1027], the deputy district attorney three times within a very short period in his closing argument, and despite the court's admonition to the jury to disregard the prosecutor's remarks, asked the jury to consider the fact that the defendant had not told the police or the district attorney of his alleged alibi. Further, he referred to the defendant as a professional gunman. The court held that there was no evidence to support such a remark.

In *People* v. *Bandhauer,* 66 Cal.2d 524 [58 Cal.Rptr. 332, 426 P.2d 900], and *People* v. *Kirkes,* 39 Cal.2d 719, 724 [249 P.2d 1], both murder cases, reversible error was committed because the prosecutor expressed his personal belief of the defendant's guilt based on facts not in evidence. There are many cases holding such expressions of personal belief to be misconduct.

*People* v. *Perez,* 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946], involved a prosecution and conviction for the sale of heroin. There is no question that the Supreme Court believed that the evidence on which the defendant was convicted was of the weakest kind, but it declined to reverse on that ground because of the substantial evidence rule. It then considered "several instances" of misconduct on the part of the prosecutor. These included highly improper questioning, and then argument on matters on which he had received negative answers and on which he had offered no proof. The court clearly felt that the accumulation of the instances

In overruling the appellant's objection to the remarks of the prosecutor, the court said: "I'm sure that the jury understands that statements of counsel are merely argument, not to be considered as evidence, and the jury will be able to disregard any statements that are not based on the evidence."

The prosecutor closed his argument shortly thereafter and a recess was taken. During the recess, the appellant's counsel moved for a mistrial upon the grounds of prejudicial misconduct committed by the prosecuting attorney in his closing argument. When the jury returned to the courtroom, the court again admonished the jury as follows: "Ladies and Gentlemen, I want at this time to instruct you to disregard completely the remarks of Mr. Wells, the Deputy District Attorney, in the concluding part of his closing argument wherein he mentioned the so-called animalistic tendencies of the defendant. I want you to disregard his comment, strike it from your thinking. The Court has concluded that it is not based upon evidence and for that reason should be completely disregarded by you."

Finally, in its instructions the court told the jury it must not consider as evidence any statement of counsel made during the trial and that the facts must be determined from the evidence received.

■ While we have no way of knowing whether this three-fold admonition of the court corrected the prejudicial effect, if any, of the prosecutor's remarks, we must assume that the jury heeded the admonitions to disregard his statements. (*People* v. *Cannedy*, 270 Cal.App.2d 669, 679 [76 Cal.Rptr.

---

of misconduct, together with the very weak evidence of guilt, required reversal in the interest of justice. That is not our case.

In *People* v. *Carr*, 163 Cal.App.2d 568 [329 P.2d 746], as in *Perez*, the court believed that the question of guilt was a very close one, and that several unsupported statements in the prosecutor's opening statement, together with a statement in his closing argument that defendants "were out working at their trade" of robbers, for which there was no support in the evidence, combined to bring about a miscarriage of justice.

*People* v. *Beal*, 116 Cal.App.2d 475 [254 P.2d 100], and *People* v. *Talle*, 111 Cal.App.2d 650 [245 P.2d 633], are so completely distinguishable that they require no discussion. In addition, the courts, as in *Perez* and *Carr*, considered the evidence of guilt to be weak.

*People* v. *Shaffer*, 150 Cal.App.2d 287 [309 P.2d 475]; *People* v. *Brophy*, 122 Cal.App.2d 638 [265 P.2d 593]; *People* v. *Hail*, 25 Cal.App. 342 [143 P. 803], were reversed for misconduct where "the evidence presented a close question of fact," and the prosecutor argued matters for which there was no evidentiary support.

In *Viereck* v. *United States*, 318 U.S. 236 [87 L.Ed. 734, 63 S.Ct. 561], the defendant was convicted of violating the Foreign Agents Registration Act. He was tried during World War II. The remarks of the prosecutor were highly inflammatory, and called on the jury to convict because of the United States' role in the war, the threat of those who were plotting our death, and the need for the jury to protect our fighting men.

24]; *People* v. *Ney,* 238 Cal.App.2d 785, 801 [48 Cal.Rptr. 265]; see *People* v. *Seiterle,* 59 Cal.2d 703, 711 [31 Cal.Rptr. 67, 381 P.2d 947], where the court said it must be "presumed" that the admonition was obeyed.)

■ In the face of the conclusive evidence of guilt it is highly unlikely that, absent the prosecutor's remarks, the jury would have failed to convict. For that reason, also, the judgment must not be set aside. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].) In construing article VI, section 13, the court said in *People* v. *Kelso,* 25 Cal.2d 848, 853 [155 P.2d 819], that there should be no reversal "[w]here the evidence of guilt is clear and convincing, and it appears that a different verdict would not otherwise have been probable. . . ."

■ We next consider appellant's assertion that prejudice resulted from an answer given on direct examination by George Embry, an identification technician with the Fresno County sheriff's office. Embry was asked: "Well, is there anything on the card that can refresh your memory as to the date [that you rolled the prints of defendant Jones]?" In response Embry said: "That would be a little hard to say right off. This—I've fingerprinted him more than once." The response was immediately objected to and the jury was admonished to disregard the testimony. Since the objection was sustained and the jury admonished to disregard the statement, it is presumed, or at least assumed, that they did disregard it. (*People* v. *Seiterle, supra,* 59 Cal.2d 703, 711; *People* v. *Cannedy, supra,* 270 Cal.App.2d 669, 679.)

As stated above, in light of the conclusive evidence of guilt, it is highly improbable that the answer complained of affected the result in any way. (*People* v. *Watson, supra; People* v. *Kelso, supra.*)

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 1, 1970.