Filed 8/7/15  P. v. Brown CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B259313 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA133481) |
| v. | |
| ANTHONY CRAIG BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur M. Lew, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury convicted defendant and appellant Anthony Craig Brown of assault with a deadly weapon, in violation of Penal Code section 245, subdivision (a)(1).[1]  The trial court sentenced defendant to the middle term of three years in state prison.

Defendant contends the judgment must be reversed due to insufficient evidence, ineffective assistance of counsel, and prosecutorial misconduct.

We affirm.

## FACTS

### *Prosecution*

On May 26, 2014, Princeton Pearson and Damian Neal were working as security guards at an apartment complex.  At approximately 12:30 a.m., defendant came to the gate and told the guards he was there to visit his brother.  As a policy, nonresidents were not admitted after 10:00 p.m., but the guards allowed defendant into the complex.  Defendant went to a nearby apartment and banged on the door for several minutes.  When no one answered, defendant walked past the guards to a second unit.

Pearson approached him and said, "I thought you were going to your brother's house."  Defendant asked the security guards if they lived in the complex, to which they responded they did not.  Defendant then said something like "Fuck you," "Shut the fuck up," or "Fuck you.  You don't live here."  He gave Neal "the finger."  Defendant knocked on the door of the second apartment for about five minutes.  Both guards politely asked him to leave.  Defendant kept saying "fuck you."  His speech was slurred and he appeared intoxicated.  Defendant continued to knock on the door, so Pearson called the police on his cell phone.

Defendant pulled out a pocketknife and pointed it toward Neal, who was about five feet away.  Pearson was about five feet behind Neal, still talking with the police on

---

[1] All further references are to the Penal Code, unless stated otherwise.

2

his phone.  Defendant said "fuck you," as he stepped toward Neal with the knife.  He moved within two feet of Neal.  Neal called out, "Knife."  He believed defendant was going to cut him, so he used pepper spray against defendant.  Defendant dropped the knife and was handcuffed by the guards.

Los Angeles Police Department Officer Salvador Sanchez responded to the scene.  He observed defendant yelling profanities at the guards.  One of the guards gave Officer Sanchez defendant's pocketknife.  Neal told the officer he deployed pepper spray because he believed defendant was going to stab him.  The officer took defendant into custody.  In front of Officer Sanchez, defendant threatened the guards that he would be released by the next day, and that he intended to return to the apartment complex.

### Defense

Defendant's mother testified that he came to her door at around 12:45 a.m. asking for gas money.  She did not have money, so she told him to ask his father.  Defendant was not acting violent or angry at the time.

Defendant's brother, who lived in the apartment complex where the incident took place, testified that he had several phone conversations with defendant that night.  In their first conversation, he told defendant to come to his house and ask his girlfriend for gas money.  Defendant called his brother a second time because his brother's girlfriend did not answer her phone.  Defendant's brother told him to go to his girlfriend's mother's house to see if she was there.  Defendant seemed normal during their conversations.

Defendant's brother's girlfriend's mother, who also lived in the apartment complex, testified that she heard someone knocking on her apartment door on the night of the incident.  She opened the door, saw defendant, and smelled tear gas.  Other than the knocking, she did not notice any commotion.

3

# DISCUSSION

## *Sufficiency of the Evidence – Assault with a Deadly Weapon*

Defendant first contends Neal's testimony that defendant took a step toward him while holding the knife was insufficient to support the assault conviction, because defendant never did anything with the knife that was likely to injure Neal. This contention lacks merit.

When the sufficiency of evidence is challenged on appeal, we must review "'the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Davis* (2009) 46 Cal.4th 539, 606.) "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. [Citation.]" (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004.)

Penal Code section 240 defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." The element of present ability is satisfied "when 'a defendant has attained the means and location to strike immediately.' [Citations.] In this context, however, 'immediately' does not mean 'instantaneously.' It simply means that the defendant must have the ability to inflict injury on the present occasion. Numerous California cases establish that an assault may be committed even if the defendant is several steps away from actually inflicting injury, or if the victim is in a protected position so that injury would not be 'immediate,' in the strictest sense of that term." (*People v. Chance* (2008) 44 Cal.4th 1164, 1168, fn. omitted (*Chance*).) "Although temporal and spatial considerations are relevant to a defendant's 'present ability' under section 240, it is the ability to inflict injury on the present occasion that is determinative, not whether injury will necessarily be the instantaneous result of the defendant's conduct." (*Id*. at p. 1171.)

4

In the context of assault with a knife or similar weapon a strike with the weapon is not necessary to complete the offense. "To warrant conviction of such offense it was not necessary that the prosecution introduce evidence to show that the appellant actually made an attempt to strike or use the knife upon the person of the [victim.]" (*People v. McCoy* (1944) 25 Cal.2d 177, 189, italics omitted; see also *People v. Vorbach* (1984) 151 Cal.App.3d 425, 429 (*Vorbach*) [holding testimony that the defendant held a knife in threatening manner and demanded money is sufficient to support assault conviction].) Nor must the defendant be close enough to strike the victim in order to be guilty of assault. In *Chance*, *supra*, 44 Cal.4th at page 1174, our Supreme Court considered a prior case in which "the defendant approached within seven or eight feet of the victim with a raised hatchet, but the victim escaped injury by running to the next room and locking the door. [The defendant] committed assault, even though he never closed the distance between himself and the victim, or swung the hatchet."

Defendant reargues the evidence. He insists the evidence is insufficient because he made no attempt to stab at Neal; instead, he simply held a knife and took a step toward him. In defendant's view, he neither threatened Neal nor used the knife in an angry manner. Defendant neglects to mention that he was shouting profanities at the guards, and that his speech was slurred as if he was intoxicated. His angry reaction was in response to Neal asking him politely to leave the apartment complex. Defendant states that he was five feet away from Neal, but Neal testified that defendant was as close as two feet away from him after stepping toward him with the knife. Neal also testified that the knife was pointed toward him, and that defendant said "fuck you" as he stepped forward.[2] Neal testified that he believed defendant intended to harm him with the knife. He called out "Knife," and deployed pepper spray against him. Taking these circumstances into account, we conclude that substantial evidence supports the jury's finding. Evidence was presented that defendant had the present ability to commit

[2] Defendant's assertion that he did not point the knife at Neal is belied by the record. At trial, counsel asked Neal if the knife was "pointed towards [him]," to which he responded in the affirmative.

5

violence on Neal. He attained the means and location to strike immediately – pointing a knife toward Neal from a distance of only two feet. It was not necessary that defendant attempt to stab or cut Neal, the action of pulling out the knife and moving close to Neal was sufficient. (See *Vorbach*, *supra*, 151 Cal.App.3d at p. 429.) A jury could reasonably find that these actions constituted an assault.

*Ineffective Assistance of Counsel – Closing Argument*

Defendant next contends his counsel's repeated use of an outdated definition of a deadly weapon as "inherently dangerous," rather than "inherently deadly," lowered the prosecution's burden of proof, and constituted ineffective assistance of counsel.

"To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that this deficient performance caused prejudice in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citations.] If a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient. [Citation.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1122-1123.)

"'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon that is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury."'" [Citation.] The Supreme Court has explained section 245 contemplates two categories of deadly weapons: In the first category are objects that are 'deadly weapons as a matter of law' such as dirks and blackjacks because 'the ordinary use for which they are designed establishe[s] their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury.' [Citations.] For example, a bottle or a pencil, while not deadly per se, may be a deadly

6

weapon within the meaning of section 245, subdivision (a)(1), when used in a manner capable of producing and likely to produce great bodily injury. [Citations.] [¶] Great bodily injury, as used in section 245, means significant or substantial injury. [Citation.] Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction. [Citation.]" (*People v. Brown* (2012) 210 Cal.App.4th 1, 6-7 (*Brown*).)

In his summation, defense counsel stated: "[A] deadly weapon [i]s any object, instrument, or weapon that is inherently dangerous for use in such a way that it is capable of causing and likely to cause great bodily injury." He advised the jury that ". . . the first prong of your analysis [is,] is it an inherent[ly] . . . dangerous weapon? [¶] The answer is it is not. A knife is a utilitarian device that people use to open boxes, cut meat. It's not an inherently dangerous weapon. It has a myriad of legitimate utilitarian uses. An inherently dangerous weapon would be those IED's you hear about on the news in Iraq, booby trap. I mean a knife is not an inherently dangerous weapon." He later argued, "The knife was not used in such a way that it's capable of causing and likely to cause great bodily injury, that is to say this knife is not a deadly weapon under the law. The law specifically defines what a deadly weapon is. This is not an inherently deadly weapon – inherently dangerous weapon. You have to look at the manner in which it was used in holding the knife or even in taking a step toward somebody with a knife – even though I contend that did not happen here – this is not a deadly weapon."

In rebuttal, the prosecutor also defined deadly weapon: ". . . And this is the jury instruction and [defense counsel] didn't read this to you. He didn't do it on purpose – he didn't read it to you on purpose – because see, that word at the end, right here, this word 'or,' that's a bad word for [defense counsel] because what it does it links – okay – he likes the 'chain' – it links those two together. It says 'a deadly weapon is any object, instrument, or weapon that is inherently deadly' – and he stopped, right, because he wants you to look at that knife and just think, you know, it's a letter opener – it's nothing – 'or' – that word – 'one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.'"

7

The trial court instructed the jury under CALCRIM No. 860: "A deadly weapon is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

Defendant relies on *Brown*, *supra*, 210 Cal.App.4th 1 to support his position that defense counsel misstated the law, and that counsel's misstatements require reversal. The *Brown* court held it is error for the trial court to instruct a jury that it may convict a defendant of assault with a deadly weapon if it finds the weapon employed was "inherently dangerous." (*Id*. at p. 11.) Brown shot two other men with a BB gun from a distance of approximately five to six feet, hitting one man in the foot and the other in the back, just after telling them to get out of his neighborhood. In his closing argument, Brown's counsel emphasized that neither of the men had suffered serious injury. He stated that, "[the BB gun] was not used in a way that was likely to cause great bodily injury. It was used in a way that would only cause minor or moderate harm . . . ." (*Id*. at p. 13.) The prosecution countered that "the weapon would have caused serious injury if the victims had been hit in the eye or some other vulnerable spot on their bodies . . . ." (*Ibid.*) The court held that although the trial court erred in instructing the jury, the error was harmless beyond a reasonable doubt because there was ample evidence the BB gun had been used in a manner capable of inflicting and likely to inflict great bodily injury, and that the evidence, along with the arguments of counsel, left no doubt that the jury had convicted on that basis. As noted above, the court emphasized that great bodily injury under section 245 means significant or substantial injury and there is no requirement of physical contact nor actual injury. (*Id.* at pp. 6-7.)

The same is true here. After defining "deadly weapon," the attorneys focused their arguments on the manner in which defendant used the pocketknife. Defense counsel emphasized that defendant "simply held" the knife in his hand, stating "[defendant] produced a knife. He did nothing with it. He stood there, and he got pepper sprayed." He argued the knife was "an inanimate object held in the hand" and that "unless [defendant] attempt[ed] to stab someone with it, nothing [wa]s going to happen. This is not a deadly weapon." Defendant concedes that the prosecutor also focused on the

8

manner in which the knife was used, rather than its inherent deadliness. The prosecutor read the definition of "deadly weapon" directly from the instructions to make the point that a weapon may be deadly through its manner of use and capability, and not just its inherently deadly nature. He did not argue that the knife was inherently deadly.

There was abundant evidence at trial that defendant used the knife in such a way as to be capable of causing and likely to cause death or great bodily injury. Defendant was not using the knife for a lawful and innocent purpose; there is no evidence that a "utilitarian purpose" was being served. Defendant was refusing to leave the apartment complex and yelling obscenities at the guards. He came within a few feet of Neal while pointing a knife toward him. It is irrelevant that defendant failed to harm Neal. Defendant did not retreat of his own accord. He dropped the knife because Neal incapacitated him with pepper spray. There was overwhelming evidence that defendant was using the knife in a way that was capable of causing and likely to cause great bodily injury or death if uninterrupted. The evidence, along with the arguments of counsel, leave no doubt that the jury convicted defendant on the basis of his use of the pocketknife, rendering defense counsel's statement harmless.

Unlike *Brown*, in this case, the jury was properly instructed by the trial court. The error was in defense counsel's summation, not in the trial court's statement of the law, which the jury understood it must follow. Just prior to defining "deadly weapon," defense counsel himself emphasized this point: "[L]et me say here [that the attorneys'] interpretations of the law are not the instructions you must follow. You must follow the written instructions the judge gives to you." The prosecutor *read* the correct instruction to the jury in rebuttal, arguing that defense counsel had *not* read from the instruction precisely because even an object that is not inherently deadly may be a deadly weapon when used in a manner capable of causing and likely to cause great bodily injury or death – the theory of liability the prosecution espoused. We conclude that, beyond a reasonable doubt, defense counsel's misstatements of the law did not contribute to the verdict. Defendant has not carried his burden of establishing prejudice, so his ineffective assistance of counsel claim necessarily fails. (Cal. Const., art. VI, § 13.)

9

***Prosecutorial Misconduct – Arguments in Rebuttal***

Defendant contends that the prosecutor committed misconduct in rebuttal, improperly appealing to the juror's passion and prejudices by suggesting that they imagine their child as the victim, and invoking his own professional credibility in support of his argument that defendant could only be convicted of assault with a deadly weapon and not a lesser included offense. The Attorney General argues that defendant forfeited the claims by failing to object on misconduct grounds or to request that the jury be admonished to disregard the alleged improprieties, and that the contentions lack merit. The Attorney General is correct.

In rebuttal, the prosecutor argued: "Let's say you're at home and your child came home and said, mom, somebody pulled a knife on me today. Really? What – did you – what happened? Did you – I mean, well we were arguing and he's cussing at me, and he pulled a knife on me. How – where was he? He was like four feet away from me. What did he do? He took a step toward me, but I was able to get away and, you know, I was really scared. Did you call the police? [¶] Well, according to [defense counsel], no, I didn't, because look, all he did was produce the knife. I mean really? [¶] He didn't have the ability to do anything. So that's why – you know, it didn't bother me that much, you know. Just think about that. That would not be a crime? That would not fit the elements of the crime to you?"

Defense counsel objected on the basis that "[t]here are other crimes that the prosecution could have but did not charge here."

The court overruled the objection, stating, "certainly that's the case but . . . if it's not charged here, then it's not relevant."

Later, the prosecutor argued, "Look, if you don't find [defendant] guilty of assault with a deadly weapon, I don't know what business you have of convicting him of simple assault because if an assault with a deadly weapon didn't happen, then neither did the simple assault. Because, ladies and gentlemen, I'm not contending to you that the

10

evidence shows that he just pulled this out and was whistling Dixie. Okay. [¶] I'm not arguing that. And I'm telling you now. If you – if – I have never done this before in my career – I'm going to do it right now – I'm telling you if you acquit him of assault with a deadly weapon, don't even bother convicting him of simple assault because that's not the crime he committed. That's plain and simple. [¶] You do what you want because you are the jury, and that's your purview. But I'm saying I'm not asking you to because that's not the crime he committed. He committed the crime of assault with a deadly weapon. If he didn't do that, then he didn't assault anyone; that he was standing there with a knife in a confrontation with no intention of doing anything."

Defense counsel did not object.

"The standards governing review of misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'"' [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial. [Citation.] In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review. [Citation.]' [Citation.]" (*People v. Parson* (2008) 44 Cal.4th 332, 359.)

Defendant forfeited his argument that the prosecutor committed misconduct in both instances. With respect to the prosecutor's alleged appeal to the jury's passion and prejudice, counsel objected on the basis that there were other crimes with which defendant could have been charged but was not. He did not object on the basis that the prosecutor's argument rose to the level of misconduct, nor did he request an admonition. With respect to the prosecution's alleged invocation of his professional credibility, defense counsel did not object at all. Neither issue was preserved for review. (See *People v. Alfaro* (2007) 41 Cal.4th 1277, 1328.)

11

Defendant seeks to avoid the rule of forfeiture by arguing that, to the extent his counsel failed to object or to object on grounds of prosecutorial misconduct, he was deprived of effective assistance of counsel. His ineffective assistance of counsel contention fails for several reasons.

"'If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.' (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)" (*People v. Gray* (2005) 37 Cal.4th 168, 207.) Here, the record is silent regarding the reason for counsel's failure to object on the grounds asserted for the first time on appeal. It is conceivable that counsel's objection in the first instance was tactical, suggesting to the jury the prosecutor had overcharged the case. As to the second point, counsel could have reasonably concluded there was no misconduct, or that the isolated comment was so trivial that it would have served no purpose to object. Accordingly, the issue is more appropriately raised in a petition for writ of habeas corpus.

Defendant also has not established that the trial was rendered fundamentally unfair or that an admonition would not have cured the alleged errors, and has necessarily failed to carry his burden of establishing prejudice. Defendant first contends that the prosecutor improperly appealed to the jurors' passions and prejudices by asking them to imagine their child in the place of the victim. "Such appeals to the sympathy or passion of the jury are misconduct at the guilt phase of trial." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1250 (*Pensinger*).) However, we see no reasonable probability that a result more favorable to defendant would have been reached if the court had admonished the jury. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Defendant cites to *Pensinger, supra,* at page 1250, in which the defendant was charged with murdering, kidnapping, and sexually assaulting a five-month-old child. During closing argument, the prosecutor stated, "'Suppose instead of being [the mother's] kid this had happened to one of your

12

children.'" In *People v. Jones* (1970) 7 Cal.App.3d 358, 363 (*Jones*), also cited by defendant, the defendant made an unprovoked attack on innocent victims, striking one of them with an iron bar. The prosecutor appealed to the fears and emotions of the jurors by stating that the sons of the jurors and their girlfriends should not dare to ride motorcycles into the defendant's area, because he "reacts very seriously." (*Id*. at pp. 361-362.) The courts in both *Pensinger* and *Jones* held that the prosecutor's statements were misconduct, but that the misconduct was not prejudicial, because there was no reasonable probability that either defendant would have obtained a more favorable result had the jury been admonished by the trial court. (*Pensinger*, *supra*, at pp. 1250-1251*; Jones*, *supra*, at pp. 363-364.)

The comments of the prosecutor in this case do not rise to the level of misconduct set forth in the above-cited cases. The comments made in the present case were less egregious and less likely to incite passions or prejudices, as was the crime. But even if misconduct was assumed in this case, it cannot be said that it is reasonably probable that a different result would have been reached in the absence of the challenged remarks. (*Watson*, *supra*, 46 Cal.2d at p. 836; *Jones*, *supra*, 7 Cal.App.3d at p. 365.) The jury was instructed "not [to] let bias, sympathy, prejudice, or public opinion influence [its] decision," to follow the law as the court explained it, and that to the extent the attorney's comments conflicted with the law, the court's instructions must be followed under CALCRIM No. 200. The court also instructed the jurors that the prosecution was required to prove the charges beyond a reasonable doubt under CALCRIM No. 220, and that nothing the attorneys said was evidence under CALCRIM No. 222. These instructions would have been sufficient to prevent the jury from convicting defendant based on the prosecutor's comments. The jury is presumed to have understood and applied the instructions. (*People v. Lewis* (2001) 26 Cal.4th 334, 390.) The prosecutor's remarks were brief, purely argumentative, and clearly not evidence. (See *Pensinger*, *supra*, 52 Cal.3d at p. 1250.) Finally, the evidence of defendant's guilt was overwhelming. It was undisputed that defendant produced a knife while standing a few feet away from Neal, and the evidence presented indicated that defendant used the knife

13

in question in a manner capable of causing and likely to cause great bodily injury or death. It is not reasonably probable that the jury would have reached a result more favorable to defendant absent the prosecutor's alleged misconduct. (See *People v. Fields* (1983) 35 Cal.3d 329, 363.)

Defendant's contention that reversal is required because the prosecutor invoked his professional credibility also fails. "The general rule is that improper vouching for the strength of the prosecution's case '"involves an attempt to bolster a witness by reference to facts outside the record."' [Citation.] Thus, it is misconduct for prosecutors to vouch for the strength of their cases by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it. [Citations.] Specifically, a prosecutor's reference to his or her own experience, comparing a defendant's case negatively to others the prosecutor knows about or has tried, is improper. [Citation.] Nor may prosecutors offer their personal opinions when they are based solely on their experience or on other facts outside the record. [Citations.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 206-207 (*Huggins*).)

Here, the prosecutor's comment that the case either involved assault with a deadly weapon or no assault at all did nothing to bolster any witnesses' testimony. It was simply a statement that, under the unique facts of this case, defendant would not be guilty of any crime if his use of the knife was not itself an assault. The only actions that could qualify for assault were defendant's acts of taking the knife out of his pocket and stepping close to Neal with the blade pointed toward him. The prosecutor's remarks highlighted his view that the case was unusual, and clarified which actions he believed the jury needed to focus on to make its decision. "It is not . . . misconduct to ask the jury to believe the prosecution's version of events as drawn from the evidence. Closing argument in a criminal trial is nothing more than a request . . . to believe each party's interpretation, proved or logically inferred from the evidence, of the events that led to the trial." (*Huggins*, *supra*, 38 Cal.4th at p. 207.) Here, the prosecutor gave the jury his view of the case. He did not act improperly.

Even if we were to conclude that the prosecutor committed misconduct, however, as we discussed above, the trial court's instructions to the jury, the fleeting and obviously argumentative nature of the comments, and the overwhelming evidence of defendant's guilt, lead us to conclude that it is not reasonably probable defendant would have obtained a more favorable result absent the prosecutor's comments. Defendant has not established prejudice, so his ineffective assistance of counsel claim necessarily fails as well.

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.


We concur:



TURNER, P. J.



MOSK, J.