[No. A022571. First Dist., Div. Three. Aug. 23, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
SAVIOR CHARLES, Defendant and Appellant.

## COUNSEL

Kent A. Davidson, under appointment by the Court of Appeal, and Andrew Paul Cappelli for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, J.**\*—This is an appeal from a judgment of conviction entered after appellant pled guilty to numerous criminal offenses.

### Background

The victim of the crimes was a 70-year-old widow who lived alone in East Oakland, California. The crimes were perpetrated in the late evening hours of May 17, 1981. The victim, lying in bed and ready to sleep, heard the crashing noise of the front door glass breaking. When she got out of the bed to investigate, she was met by two intruders who gained entry into the house by kicking open the door. One of them was appellant, the other Vernell Owens, his codefendant.

Owens, who was wearing brass knuckles, demanded money from the elderly lady. When she answered that all the money she collected had been

*Assigned by the Chairperson of the Judicial Council.

given to charities, Owens hit her in the head, knocked her on the floor and stepped on her hand and feet.

While Owens searched the house looking for money, appellant dragged the victim to the bed and threatened, "I'm not through yet" and "I have got to have a taste of this white bitch." He ordered the victim to undress and put up her legs, and then appellant raped her. Thereupon he knifed her in the hand and abdomen, tied her neck, wrists and ankles with a telephone cord he had ripped out of the wall and humiliated her further by breaking eggs over her face. Before leaving the home, appellant set a bunch of newspapers on fire and threw them on the victim's bed where she still lay nude and tied. After her assailants left, the victim struggled to loosen her bonds and miraculously escaped from her blazing home, running naked up to the street to her neighbor's home. Before being taken to the hospital, she described her ordeal to the police and detailed her losses—jewelry and coins stolen from her home. While her home was significantly damaged by fire, the victim lay in the hospital for almost two weeks nursing burn and stab wounds.

Appellant was charged with attempted murder (Pen. Code[1] §§ 187/664, count I); first degree burglary (§ 459, count II); rape (§§ 261 and 264.1, count III); attempted robbery (§§ 211/664, count IV); arson causing great bodily injury (§ 451, subd. (a), count V); and damaging telephone wires (§ 591, count VI). In addition, as to some counts the information alleged use of a deadly weapon, infliction of great bodily injury and great bodily injury on the aged in violation of sections 12022, subdivision (b), 12022.3, subdivision (a), 12022.7, 12022.8, 1203.09 and 1203.075. The information further alleged a prior felony conviction.

Shortly after appellant's motion to suppress evidence pursuant to section 1538.5 was granted as to a medallion only and denied as to all other evidence seized,[2] jury trial commenced. After trial was completed and during jury deliberations, it became apparent that there had been jury misconduct. During a recess in deliberations but before a determination of whether a mistrial should be granted, appellant pled guilty to all charges and nolo contendere to all the enhancing allegations. In return for his plea, appellant's prior conviction was stricken and the trial court promised him a prison sentence of only 12 years (instead of a much more severe possible sentence) on condition that appellant waive his right to appeal the court's prior ruling denying his suppression motion. Thereafter, in full compliance with the plea

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]This evidence consisted of clothes, addressed bill envelopes, a newspaper article, gold piece, etc.

negotiations, appellant was sentenced to state prison to the agreed term of 12 years.[3]

His express waiver notwithstanding, appellant filed a notice of appeal pursuant to section 1538.5, subdivision (m),[4] challenging the legality of the search and seizure. The crucial issues thus arise whether a criminal defendant may validly waive his right to appellate review as a part of the plea negotiation and whether the waiver in the present case was valid. For reasons which follow, we answer both questions in the affirmative and uphold the trial court's judgment.

## Discussion

■ It is well settled that the right of a criminal defendant to appeal his conviction is purely statutory in California inasmuch as neither the federal nor the state Constitution provides such right. (*Abney* v. *United States* (1977) 431 U.S. 651, 656 [52 L.Ed.2d 651, 657-658, 97 S.Ct. 2034]; *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814].) ■ By entering a guilty plea the defendant waives his right to appeal any error in the pretrial proceedings. (*Lefkowitz* v. *Newsome* (1975) 420 U.S. 283, 288 [43 L.Ed.2d 196, 201, 95 S.Ct. 886]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895-896 [135 Cal.Rptr. 786, 558 P.2d 872].) The general rule in this country is that he cannot ever, even with the consent of all parties, enter a plea of guilty conditioned upon retaining the right to challenge in the appellate courts the denial of his motion to suppress evidence. (*State* v. *Losieau* (1978) 266 N.W.2d 259.) For, "by his plea of guilty he had admitted the facts establishing the essential elements of the crime with which he was charged and thus has waived his right to appeal nonjurisdictional defects." (*Id.,* at p. 262.) ■ California codified an exception to the general rule when it adopted section 1538.5, subdivision (m) in 1967. That this statute is an exception to the general rule that all errors prior to the entry of the guilty plea are waived (except jurisdictional ones) is clear. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 897 [150 Cal.Rptr. 910, 587 P.2d 706]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409,

---

[3]The record shows that the prosecutor repeatedly objected to this lenient sentence. In a letter addressed to the probation office, the prosecutor recommended that appellant be sentenced to state prison for a term of 18 years. The prosecutor also argued at the sentencing hearing that appellant should get a much more severe sentence for the heinous crimes he committed.

[4]Section 1538.5, subdivision (m), provides in relevant part that "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence."

559 P.2d 1028].) Significantly enough, prior to the enactment of this section a defendant could not appeal the search and seizure issue following a guilty plea because as the court put it "the right at stake here is not the fundamental right to be free from unreasonable searches and seizures, but a much narrower right—to appeal from an adverse ruling on a suppression motion . . . ." (*In re David G.* (1979) 93 Cal.App.3d 247, 254 [155 Cal.Rptr. 500].)

The limited issue before us therefore is whether the statutory, nonfundamental right accorded by section 1538.5, subdivision (m), may be waived by a defendant in return for the benefits granted by a plea agreement. While this issue has neither been raised nor decided by any California case, there are cogent policy considerations and persuasive legal authorities compelling the conclusion that such waiver must be upheld by reviewing courts.

It is, of course, commonplace that plea negotiating has become an accepted practice in American criminal jurisprudence, "an integral part of the administration of justice . . ." (*Barber* v. *Gladden* (D.Ore. 1963) 220 F.Supp. 308, 314) and "essential to expeditious and fair administration of justice" (*People* v. *Williams* (1969) 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348]). The great majority of criminal cases are disposed of by pleas of guilty. As the court remarked in *Brady* v. *United States* (1970) 397 U.S. 742, 752 [25 L.Ed.2d 747, 758, 90 S.Ct. 1463], statistical data show that over three-fourths of the criminal convictions in this country rest on guilty pleas.

■ Both the People and the defendant may profit from plea negotiations. The benefit to the defendant is lessened punishment by way of reducing the charges, dismissing or refraining from bringing other charges or presenting the court with favorable sentence recommendation. (*Staton* v. *Warden* (1978) 175 Conn. 328 [398 A.2d 1176, 1178]; see also 69 Nw.U.L.Rev. 663-664; 83 Harv.L.Rev. 1387, 1389-1390.) The benefit to the People lies in saving the costs of trial, increased efficiency of the procedure and added flexibility of the criminal process. As widely recognized, plea negotiation is an indispensable element in the efficient administration of criminal justice. (*Brady* v. *United States, supra,* 397 U.S. 742; *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409]; *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].)

■ Due to the obvious importance of guilty pleas the courts recognize that in order to obtain the mutual benefits flowing from such pleas the criminal defendant may waive such crucial constitutional rights as the privilege against self-incrimination, trial by jury, and confrontation and cross-examination of incriminating witnesses. (*Boykin* v. *Alabama* (1969) 395 U.S.

238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) Starting from this premise, the conclusion is inescapable that if constitutional rights of utmost significance may be surrendered by the defendant in order to achieve the well-recognized benefits of the plea agreement, a statutory and less fundamental right (such as the right to appeal from an adverse ruling on the legality of search) may also be validly waived provided such waiver is knowing, free and intelligent.

This proposition is supported not only by plain logic and common sense, but also by a vast array of cases and legal authorities from sister state jurisdictions. In *People* v. *Williams* (1975) 36 N.Y.2d 829 [370 N.Y.S.2d 904, 331 N.E.2d 684] (cert. den. 423 U.S. 873 [46 L.Ed.2d 104, 96 S.Ct. 141]), a case very similar to the case at bench, the defendant was asked to waive his right of appeal from the denial of his suppression motion as a condition to the acceptance of his guilty plea. On appeal, the defendant contended that as a matter of law there could be no valid waiver of his statutory right to appeal from the preconviction denial of the motion to suppress. The reviewing court rejected defendant's contention and held that where a plea on a condition was voluntarily entered with full comprehension on the defendant's part of both the plea and the associated conditions, the waiver of his right to appeal the denial of a suppression motion may properly be enforced against him.

Again, in *People* v. *Di Orio* (1984) 99 App.Div.2d 593 [471 N.Y.S.2d 701], the defendant pled guilty to the lesser charge. One of the conditions of the plea was defendant's consent to waive his right to appeal the result of the suppression hearing. In upholding the validity of the waiver, the appellate court pointed out that the waiver of the statutory right to appeal the denial of a suppression motion is effective provided it is knowingly and voluntarily made and is a part of the plea negotiations.

In *People* v. *Martin C.* (1981) 107 Misc.2d 1007 [436 N.Y.S.2d 524], in a comparable situation, the reviewing court emphasized if such fundamental constitutional rights as right to jury trial, cross-examination and to exercise the privilege against self-incrimination may be waived as a condition to acceptance of a plea, a statutory right of appeal from an adverse pretrial ruling may be likewise waived in order to attain the mutual benefits of the plea negotiations. Echoing the same idea, the United States Supreme Court likewise stated, "We see nothing in the right to appeal or the right to attack collaterally a conviction, even where constitutional errors are claimed, which elevates those rights above the rights to jury trial and to remain silent." (*Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17, 33 [36 L.Ed.2d 714, 727, 93 S.Ct. 1977].)

*People* v. *Jasper* (1981) 107 Misc.2d 992 [436 N.Y.S.2d 185] expressed the same principles as set out above and underscored, that a plea conditioned upon a defendant's waiver of his right to appeal the denial of a suppression motion is permissible and valid as long as the record reflect that such waiver was entered into knowingly, freely and voluntarily. (Accord *United States* ex rel. *Amuso* v. *LaVallee* (E.D.N.Y. 1968) 291 F.Supp. 383 [affd. 427 F.2d 328]; *State* v. *Gibson* (1975) 68 N.J. 499 [348 A.2d 769, 89 A.L.R.3d 840]; *Staton* v. *Warden, supra,* 398 A.2d 1176; *State* v. *McKinney* (La. 1981) 406 So.2d 160; *People* v. *Jimenez* (1983) 97 App.Div.2d 799 [468 N.Y.S.2d 421]; *State* ex rel. *Adams* v. *Norvell* (1969) 1 Tenn.Crim. 648 [448 S.W.2d 454].)

The principles set out above are buttressed by the Uniform Rules of Criminal Procedure (approved 1974) as well. Rule 444(d) provides that a negotiated plea bars an appeal based upon any nonjurisdictional defect in the proceedings except an order denying a pretrial motion to suppress evidence or any pretrial motion to suppress evidence or any pretrial motion which, if granted, would be dispositive of the case. Notwithstanding this general premise, rule 443(a)(4) sets up an exception by providing that the parties may agree that the defendant will plead guilty on the condition that he or she will not seek appellate review as permitted under rule 444(d) of an order denying a pretrial motion. (Accord *State* v. *Gibson, supra,* 348 A.2d 769, 774; *State* v. *Crosby* (La. 1976) 338 So.2d 584, 589; *State* v. *McKinney, supra,* 406 So.2d 160, 162.) The rationale of this exception, as explained in the comment to the section, is to make the plea final and thereby encourage the plea agreement process.[5]

■ Appellant's contention that the waiver at bench should be held invalid because it is against the public policy of this state (Civ. Code, § 3513,[6] *People* v. *Dominguez* (1967) 256 Cal.App.2d 623 [64 Cal.Rptr. 290]; *People* v. *Blakeman* (1959) 170 Cal.App.2d 596 [339 P.2d 202]) is not persuasive.

---

[5]The comment to rule 443(a)(4) states as follows: "If the right set out in Rule 444(d) were absolute, in the sense that it could never be surrendered in the plea agreement process, then the result might be to discourage plea negotiations. In every case, the prosecutor would know that notwithstanding the defendant's plea the case really is not over, as the defendant might still appeal on several grounds unrelated to the sufficiency of the procedures used in receiving the plea. Under such circumstances, it is likely that defendants could not obtain concessions to the extent that they are now obtained, as presently, where (for example) a defendant's pretrial motion to suppress is denied, one of the elements in the bargaining equation is the probability of the trial judge being upheld on appeal. That is, the defendant may gain concessions by his plea because the prosecutor knows that as a consequence of the plea the judge's ruling can no longer be challenged."

[6]Civil Code section 3513 provides that "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

While the statutory right to appeal must be jealously protected (*Douglas v. California, supra,* 372 U.S. 353), there is equal public interest that plea agreements freely entered into should be encouraged by enforcing their terms consented to by the parties. As the court remarked in *United States ex rel. Amuso* v. *LaVallee, supra,* 291 F.Supp. 383, 385, "Conditioning charge concessions on a waiver of the right to appeal from the sentence on the guilty plea is one method of making a plea agreement enforcible." Moreover, the argument that waiver of appellate right in return for a plea contravenes public policy was raised and rejected by *State* v. *Gibson, supra,* 348 A.2d 769 where the court stated as follows: "It is obvious that a pronouncement by this court of the flat illegality under any circumstances of an agreement by a defendant to waive an appeal would operate substantially to cut down the incentive of prosecutors in many cases to offer what particular defendants and their attorneys might regard as worthwhile inducements to forego that right. Discouragement of plea negotiation to that extent does not appear to us consistent with sound judicial policy. [¶] *We do not share the view that there is an affirmative public policy to be served in fostering appeals,* whether civil or criminal, *such that the waiver of an appeal by a defendant is per se against the public interest.* It has been said, to the contrary, that '*[t]he settlement of litigation ranks high in our public policy.*' [Citation.] That view properly applies to criminal as well as civil litigation, particularly in this era of proliferation of criminal appeals, provided always the administration of such a settlement is fair, free from oppressiveness, and sensitive to the interests of both the accused and the State." (At p. 775, italics added.)

California law also recognizes that a criminal defendant may waive his rights under section 1538.5. Thus, in *People* v. *Peters* (1970) 7 Cal.App.3d 154, 159-160 [86 Cal.Rptr. 521], the court held that a defendant who withdrew his motion under section 1538.5 and stipulated to the admissibility of the evidence could not raise the search and seizure issue on appeal. We believe the waiver of the right to seek appellate review may be deemed analogous to a withdrawal of the motion to suppress evidence. It is also well established that the search and seizure issue may be waived by failing to make an appropriate objection at trial, that is, by tacit waiver. (*People* v. *Rogers* (1978) 21 Cal.3d 542 [146 Cal.Rptr. 732, 579 P.2d 1048].) If tacit waiver of rights under section 1538.5 is acknowledged, no good reason appears why an express waiver freely and intelligently made by a defendant should be denied recognition by the court.

We do, of course, recognize that some cases do hold that the defendant's right to appeal is not subject to bargaining and that the waiver of appellate right as a price for a plea has been held to be either unconstitutional and/or

contrary to public policy. (*People* v. *Butler* (1972) 43 Mich.App. 370 [204 N.W.2d 325]; *People* v. *Stevenson* (1975) 60 Mich.App. 614 [231 N.W.2d 476]; *State* v. *Ethington* (1979) 121 Ariz. 572 [592 P.2d 768]; see also *Worcester* v. *C.I.R.* (1st Cir. 1966) 370 F.2d 713.) These authorities, however, represent a minority view (*State* v. *Gibson, supra,* 348 A.2d at p. 772), in this country and their reasoning lacks persuasion. They do not address why a defendant may be allowed to waive his most important constitutional rights (right to jury trial, cross-examination, and privilege against self-incrimination) as a price for a plea, but at the same time is barred from waiving the much lesser right of appeal—a right based merely on statute and which does not even qualify as a "fundamental" right. (*Abney* v. *United States, supra,* 431 U.S. 651; *In re David G., supra,* 93 Cal.App.3d 247.) Therefore, we believe that *Butler* and its progeny are founded on questionable legal premises and as a consequence, we decline to follow them.

■ Appellant's alternative contention that abandoning his statutory right to appeal the suppression ruling should be invalidated because it was a result of coercion on the part of the trial judge, must be rejected for two distinct reasons.

One, appellant was repeatedly advised by both the district attorney and the trial judge that his guilty plea and resultant imposition of a 12-year sentence was accepted on condition that he would waive his right to appeal the denial of his suppression motion.[7] He fully understood the conditions of the agreement, including the waiver of appeal right, and did avail himself of the benefit of the court's plea offer. Under these circumstances appellant is bound by the whole agreement and is not free to repudiate its unfavorable terms. (*People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1024 [184 Cal.Rptr. 483]; *People* v. *Caron* (1981) 115 Cal.App.3d 236, 246 [171 Cal.Rptr. 203].)

---

[7]The pertinent part of the record reads as follows: "Mr. HARMON [Deputy District Attorney]: . . . You realize that in order to get the 12 years that the judge is going to give you, that you are agreeing to give up your right to appeal that motion? Do you realize that?

"THE DEFENDANT: Yes.

"MR. HARMON: And you are doing that so that you can get the 12 years, aren't you? I mean that is one of the reasons that you are giving it up; isn't it?

"THE COURT: You are giving up your right to appeal so that you don't get stuck with more than 12 years.

"THE DEFENDANT: I am pleading guilty so that I don't get more than 12 years.

"THE COURT: That's right, and in doing that, you are also giving up your right to appeal. Right?

"THE DEFENDANT: Yes.

"MR. HARMON: And you realize that one of the reasons he is agreeing to give you 12 years is because you gave up your right to appeal that. Do you understand that?

"THE COURT: Do you understand what he is saying?

"(The defendant nods affirmatively.)"

Two, the fact that appellant entered into the plea agreement and consented to the waiver of his right to appeal only to avoid a higher punishment does not render the plea coercive. In an analogous situation when the defendant entered into a plea to avoid the possibility of a death sentence, the Supreme Court held that the plea of guilty was not invalid as coerced by pointing out that " ' ' "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." ' ' " (*Brady* v. *United States, supra,* 397 U.S. at p. 755 [25 L.Ed.2d at p. 760].)

■ Appellant's additional argument that the plea agreement at bench was invalid because the judge exceeded his role by actively negotiating instead of passively approving the agreement, requires only brief comment. Even assuming arguendo that the attitude of the judge was not completely objective (*People* v. *Orin* (1975) 13 Cal.3d 937, 92-943 [120 Cal.Rptr. 65, 533 P.2d 193]; *People* v. *Williams, supra,* 269 Cal.App.2d 879, 884), appellant cannot prevail upon this ground. It is blackletter law that appellant may challenge only errors which are injurious to him—not those which may be injurious to the other party. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 212-213; *People* v. *Powell* (1949) 34 Cal.2d 196, 205 [208 P.2d 974].) While in this case the prosecution objected to the 12-year sentence and suggested a minimum of 18 years, appellant accepted the trial court's offer of a 12-year prison term for all the offenses committed and did so without any protestation or opposition. Under these circumstances appellant cannot be heard to complain about the judge's participation in the negotiating process because, as succinctly stated, it is "intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." (*Lindsay-Strathmore I. Dist.* v. *Superior Court* (1920) 182 Cal. 315, 338 [187 P. 1056]; see also *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 386, 392 [139 P.2d 930]; *In re Christian J.* (1984) 155 Cal.App.3d 276, 279 [202 Cal.Rptr. 54].)

In summary, we conclude that a criminal defendant may waive his or her statutory right to appeal the trial court's ruling on the suppression motion and that such waiver may be made a condition of a plea agreement. As long as the record shows that the waiver was free, knowing and intelligent (as is the case here), it must be upheld as a part of the plea agreement and the

defendant will be forever barred from raising the search and seizure issue on appeal notwithstanding section 1538.5, subdivision (m).

In light of our holding, we need not address the additional issues raised by appellant.

The judgment is affirmed.

Barry-Deal, J., concurred.

**WHITE, P. J.**—I concur in the judgment.

Appellant's opening brief states ". . . appellant pleaded guilty and waived his 1538.5 rights. (R.T.C.O.P. 34 et seq.)" The record designated,[1] in my

---

[1]"THE COURT: Mr. Charles, you are on trial, the jury is out, and I understand you want to enter a plea of guilty; is that right?

"Now, *I said he could plead no contest to the enhancement clause,* but I said nothing but he plead guilty. He is guilty as the actor. *He is guilty on an aiding and abetting theory, because he is legally responsible for things that 'Noonie' Owens did.*

"Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now do you wish to plead guilty?

"THE DEFENDANT: Yes.

"THE COURT: *You understand, and you understand if you plead guilty, I say also then I am not going to honor any request of you to challenge the search. Do you understand that?*

"*Now, that does not mean that some lawyer can't raise it, but I am saying, as far as I'm concerned, you are giving it up. Do you understand that?*

(The defendant nods affirmatively.)

"THE COURT: Please answer out loud, because my Reporter has to—

"THE DEFENDANT: Yes.

"THE COURT: You understand you have a *right to a jury trial?* They are actually deliberating now.

"THE DEFENDANT: Yes.

"THE COURT: You give that right up when you plead guilty? Do you understand that?

(The defendant nods affirmatively.)

"THE COURT: And that is what you want to do; is that right?

(The defendant nods affirmatively.)

"THE COURT: All right. So I don't see why I have to go through—

"All right, and you understand you are not only *giving up your right to trial* but you are giving up your *right to remain silent? Do you understand that?* You don't have to plead guilty. You have a right to go ahead and say, 'Finish my trial. Let the jury understand it'?

"THE DEFENDANT: *Yes.*

"THE COURT: All right.

"*Confrontation.* Well, he has already been confronted, so he is not waiving confrontation in this sense, because he has had the whole trial in front of him.

"MR. HARMON [Deputy district attorney]: He is waiving it because he is bypassing it.

"THE COURT: You understand that *you have heard the witnesses and you had a right to hear the witnesses?* Right?

(The defendant nods affirmatively.)

"THE COURT: To the charge of attempted murder, as charged in the first count, what do

view, repudiates in material part appellate counsel's assessment of its content. Appellant did plead "guilty" to all crimes charged and "no contest" to alleged enhancements. And the court did accept the "pleas" obviously contemplating execution of the indicated sentence bargain (12 years state

---

you plead?

"THE DEFENDANT: Guilty.

"THE COURT: Did you use a knife?

"THE DEFENDANT: No contest.

"THE COURT: No contest.

"I have advised him that I would accept the plea of no contest, but that still—

"*You understand in pleading no contest, you still can be held responsible? Do you understand that?*

"THE DEFENDANT: Does that mean when I get to the place where I'm going, that they could—

"THE COURT: When you get to the place that you are going, I will give you all the time that they can give you, regardless of what you admit. I will set the number of years, and they cannot increase this thing, the number of, because of this. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Did you inflict great bodily injury?

"THE DEFENDANT: No contest.

"THE COURT: To the charge you did commit burglary by entering the residence of Mrs. Burdack with the intention of stealing?

"THE DEFENDANT: Guilty.

"THE COURT: And did you use a knife?

"THE DEFENDANT: No contest.

"THE COURT: I don't think he has to admit the infirm clause. I think that it is an issue of fact. It is pleaded, and the woman testified.

"Do you stipulate that the victim was over 60?

"MR. COSTAIN: Yes, your Honor.

"MR. HARMON: Can you ask Mr. Charles?

"THE COURT: Sir, he has already admitted the infliction of great bodily injury.

"MR. HARMON: Does not that add?

"MR. COSTAIN: Just for the probation.

"THE COURT: The infirm clause declares him ineligible for probation.

"MR. HARMON: You are right.

"THE COURT: We looked that up.

"THE CLERK: The disposition?

"THE COURT: As to the infirm clause the defendant stipulates that the victim was over the age of 60.

"Now, he has already independently entered a plea of no contest to the serious bodily injury. He knows he is going to prison.

"MR. COSTAIN: That's correct.

"THE CLERK: That is a first-degree burglary, too, which you did not state.

"THE COURT: That's right.

"You understand that you are pleading guilty to first-degre [*sic*] burglary?

"THE DEFENDANT: Yes.

"THE COURT: To the charge of rape, what is your plea?

"THE DEFENDANT: Guilty.

"THE COURT: And did you act in concert with another person?

"THE DEFENDANT: Yes.

"THE COURT: And did you use a knife?

"THE DEFENDANT: No contest.

"THE COURT: And did you inflict great bodily injury?

"THE DEFENDANT: No contest.

"THE COURT: There is an infirm clause that has already been stipulated, that the victim

prison) it struck with appellant's counsel during recess. However, the record is devoid of any specific and express showing that (1) appellant

---

was over—

"Do you stipulate as to the infirm clause to all the counts that have been alleged?

"MR. COSTAIN: Yes.

"THE COURT: To the charge of attempted robbery, as charged in the fourth count as amended, what is your plea?

"THE DEFENDANT: Guilty.

"THE COURT: Did you use a knife?

"THE DEFENDANT: No contest.

"THE COURT: Did you inflict great bodily injury?

"THE DEFENDANT: No contest.

"THE COURT: The infirm clause is admitted by stipulation.

"Did you commit the crime of arson in connection with Section 451A and 451B?

"THE DEFENDANT: Guilty.

"THE COURT: Did you distroy [sic] the telephone—did you disconnect or did you sever the telephone or the telephone lines?

"THE DEFENDANT: Guilty.

"THE COURT: Very well.

"THE CLERK: The prior?

"THE COURT: I'm striking the prior because it is not—*I will strike the prior at this time on the grounds that it is legal surplusage.*

"I can take judicial notice of a file I have here on my desk that the defendant was, in fact, convicted in 1978, but it is not a separately served prison prior.

"Very well. Is time for sentence waived?

"MR. COSTAIN: Yes.

"MR. HARMON: Can I just ask a couple of questions?

"THE COURT: Yes, sir.

"*I represented to your attorney that my present intent is to give you 12 years in prison.*

"Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: And that means that you would have to serve eight calendar years. Do you understand that?

"THE DEFENDANT: I don't get Sage time and good time?

"THE COURT: Yes. You get the time you have been in jail and the good-time credits but—

"Now I want you to understand one thing. You have been in custody since how long?

"MR. HARMON: May of '81.

"THE DEFENDANT: May 21.

"MR. HARMON: May 21st.

"THE COURT: You will get the actual days, but your good time, work time, does not go to your in-time. You are going to have to serve 96 months in.

"THE DEFENDANT: What do you mean by that?

"THE COURT: I mean—all right, you were arrested in May.

"MR. COSTAIN: May of '81, May 21st.

"THE COURT: So let's say—what date was it? About the middle of the month?

"MR. HARMON: May 21.

"MR. COSTAIN: He should get out May 21 of 1989. That is the simplest way to say that.

"THE DEFENDANT: I don't get good time?

"THE COURT: Good time counts on parole, doesn't count toward the time in.

"THE DEFENDANT: I don't get work time?

"THE COURT: On parole.

"THE DEFENDANT: Okay.

"THE COURT: But not as a time in.

"Do you understand what I am talking about? You have got to do eight years in, 96

possessed a full understanding of his statutorily afforded right of appeal
(Pen. Code, § 1538.5, subd. (m)) and (2) that appellant prior to pleading

---

months now, and that leaves four more years. Right?

"THE DEFENDANT: That is how much time I have got to do? Four more years?

"THE COURT: No. You have got to do 96 months less how many months has he been in?

"MR. COSTAIN: About 16.

"THE COURT: All right, so you have got to do 80 months.

"Now you (indicating) wanted to say something?

"MR. HARMON: Just wanted to ask him some questions.

"Mr. Costain had you sign a form? Right?

"THE DEFENDANT: Yes.

"MR. HARMON: Did you read that over? Are you able to read?

"THE COURT: *He is not trying to hurt you, Mister. I forgot to ask you a couple of questions.*

"THE DEFENDANT: I know how to read.

"MR. HARMON: Okay. *Were you able to understand the information on the form?*

"THE DEFENDANT: *Yes.*

"THE COURT: *And you signed your name each time? Right?*

"THE DEFENDANT: *Yes.*

"MR. HARMON: Now are you pleading guilty after you have discussed this case with Mr. Costain, guilty and no contest, the way that you said?

"THE COURT: What he is asking, have you had a full chance to talk to Mr. Costain? Is that right?

"THE DEFENDANT: Yes, I did.

"MR. HARMON: And nothing about what has been happening to the jury has any effect on you pleading guilty, has it?

"THE COURT: Well, I don't think—

"Have you followed your attorney's advice in pleading guilty?

"THE DEFENDANT: Have I followed my attorney's advice?

"THE COURT: Yes.

"THE DEFENDANT: Yes. Do you want me to answer your question?

"MR. COSTAIN: I don't think that that is an entirely proper question to ask him.

"THE COURT: Mr. Costain did not threaten you in any fashion?

"THE DEFENDANT: No.

"THE COURT: All right.

"MR. HARMON: *Okay. Just a couple of other questions.*

"*Now, the motion. Remember the motion about whether or not you were arrested properly and whether or not Mr. Owens was arrested properly? Do you remember that?*

"THE DEFENDANT: *Yes,* I remember it.

"MR. HARMON: *Okay. Now, one of the things that you have to do and one of the conditions in order to get the 12 years that the judge is going to give you, you have to agree to give up your right to appeal that. Do you understand that?*

"*Do you understand?*

"THE DEFENDANT: *Yes.*

"MR. HARMON: Okay.

"THE DEFENDANT: You see, my attorney didn't talk to me about that.

"MR. HARMON: All right. Let me ask some questions. I think he has got some questions to ask you about that.

"You realize that in order to get the 12 years that the judge is going to give you, that you are agreeing to give up your right to appeal that motion? *Do you realize that?*

"THE DEFENDANT: Yes.

"MR. HARMON: And you are doing that so that you can get the 12 years, aren't you? I mean that is one of the reasons that you are giving it up; isn't it?

"THE COURT: *You are giving up your right to appeal so that you don't get stuck with*

guilty freely, voluntarily, knowingly and expressly waived the said right. The absence of any showing on the face of the record of *advice* and *waiver* prior to appellant's pleas confessing guilt, compels, I would think, a determination at law that appellant did not knowingly and intelligently waive his right to receive appellate review of adverse pretrial rulings as regards search and seizures issues incident to his cause.

Apparently during recess, albeit off the record, defense counsel communicated to the court that appellant agreed to the court's condition compelling appellant to waive his Penal Code section 1538.5, subdivision (m) right of review before the court would accept his pleas of guilt. Apparently concurrently therewith defense counsel also advised the court of his intention to file an appeal in effect testing on appellant's behalf the viability of the court's condition. I think it a reasonable inference that this pragmatic court's response to defense counsel's stated stratagem was probably essentially the same as later stated of record to appellant, i.e., "Mister, you can raise it on appeal, but I won't 'honor' . . . it with a certificate of probable cause,"

---

*more than 12 years.*

"THE DEFENDANT: *I am pleading guilty so that I don't get more than 12 years.*

"THE COURT: *That's right, and in doing that, you are also giving up your right to appeal. Right?*

"THE DEFENDANT: *Yes.*

"MR. HARMON: And you realize that one of the reasons he is agreeing to give you 12 years is because you gave up your right to appeal that. Do you understand that?

"THE COURT: Do you understand what he is saying?

(The defendant nods affirmatively.)

"THE COURT: I would not agree—sir, put another way, *I would not agree to 12 years if you weren't giving up your appeal.* Do you understand that?

"THE DEFENDANT: *Yes, I understand that. My lawyer told me something else.*

"THE COURT: *I know what your lawyer told you, and he can discuss that, but that is what the record reads.*

"*As far as I'm concerned, you have no right to appeal.*

"*Now, an appellate court might say something otherwise* but I say when you take advantage of this plea and you plead guilty under those circumstances.

"And I'm fully aware of the provisions of the code.

"MR. COSTAIN: *I want to put on the record, too, that I have explained to Mr. Charles that he has given up the right to appeal under 1538.5 and I have also explained to him that I don't think that this issue is valid or, at least, that the issue is unsettled in the California courts, and I would file an appeal on that issue.*

"THE COURT: And I would deny a certificate of probable cause.

"MR. HARMON: Let me state my position very briefly.

"I totally disagree with the Court indicating what you are going to sentence him. I'm going to do everything within my effort to convince you that that is improper, that he should get a much more severe sentence.

"I do this not out of any effort to make your judgment look bad but because that is what I think should be done.

"THE COURT: Mr. Harmon, you fully declared that to me, and I told you at the time I understand what you wish to do, and you do what you think is legally appropriate for you to do." (Italics added.)

"as far as I'm concerned you [he] are [is] giving it up . . . if you [he] plead[s] guilty."

On this record, then, the court must be perceived as assuming if not presuming that because he "want[ed] to enter a plea of guilty" appellant possessed an adequate understanding of the law relating to his statutory right of appeal; and by pleading guilty he signaled his desire to voluntarily waive and give up the same.

But, of course, at law the trial court could not presume appellant's waiver and neither can this court. It is settled doctrine that a defendant who enters a plea of guilty simultaneously waives or forfeits important constitutional rights. But such waiver by guilty plea is void in violation of the due process clause unless it is " 'an intentional relinquishment or abandonment of a known right or privilege' (*Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938)." (See *Boykin* v. *Alabama* (1969) 395 U.S. 238, 242-243, fn. 4 [23 L.Ed.2d 274, 89 S.Ct. 1709]; see also *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], cert. den. 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708]; *In re Yurko* (1974) 10 Cal.3d 857, 863.) Courts indulge every reasonable presumption against waiver of fundamental constitutional rights and never presume acquiescence in the forfeiture of fundamental rights. (*Johnson* v. *Zerbst, supra,* 304 U.S. at p. 464 [23 L.Ed.2d at p. 274].) Consequently, *Boykin/Tahl/Yurko* hold that at law there is no valid waiver of an accused's constitutional or fundamental rights in the absence of a specific and express showing on the face of the record that the rights were fully known to and expressly waived by the accused.

As regards waiver thereof, I think that statutory rights are no less important or fundamental than constitutional rights. No sound, logical or compelling reason exists for sanctioning less than full compliance with a *Boykin/Tahl/Yurko* standard as regards waiver of statutory rights when conditioning a "guilty" plea. Conversely, every consideration I can think of dictates that this court require compliance. Notably, appellant's statutory right to further appellate review of the validity of search and seizure is predicated upon his conviction by decision or plea. Manifestly, then, the accused does not forfeit or waive section 1538.5, subdivision (m) by judicially confessing his crime in the absence of an express waiver on the record. Moreover, the statutory right to appeal provides the only direct means of securing to the accused upon conviction one's constitutionally afforded liberty and security interests against unwarranted governmental intrusion. (U.S. Const., 4th Amend.) Clearly, then, the trial court was required to provide this reviewing court with a record requiring no speculation or presumption that upon being fully advised by the court (or counsel in the court's presence) appellant expressly waived the statutory right to review preserved search and seizure issues.

(*Id., In re Yurko* at p. 861.) Obviously, the trial court in this instance failed in this regard, a fact seemingly the court itself appreciated. Consequently, the court *subsequent* to accepting appellant's pleas of guilt is noted to observe (see fn. 1) "He is not trying to hurt you, Mister. I forgot to ask you a couple of questions." I would think that "couple of questions" were in fact three, i.e., (1) You understand you have a right under the statutory law even though you plead "guilty," to appeal this court's earlier rulings that your arrest and confession and other evidence were lawfully obtained by the police, etc.? (2) Understanding that right and having it in mind, do you give it up? (3) Other than your expectation that you will receive 12 years punishment as presently indicated, have any other promises been made to you inducing you to give up your right to appeal? The trial court's discretion is broad and no recitation of a formula by rote is required so long as it does not require inference to determine specific advisement and express waiver of rights prior to a guilty plea. (See *In re Tahl, supra,* at p. 132.)

Consequently, counsel's (Mr. Harmon) and the court's questioning *subsequent* to receiving appellant's guilty pleas are insufficient upon which to base a finding of waiver. Appearing as afterthought subsequent to formal change of plea, they require that this court presume that appellant's affirmative responses thereto accurately reflected his state of mind prior to or at the time of pleading guilty. In any case, court and counsel's voir dire missed the mark in failing to exact an express waiver. The trial court's observation that ". . . an appellate court might say something otherwise" was accurate if not prophetic. On review of this record I, for one, conclude that appellant did not knowingly, intelligently and expressly waive his statutory section 1538.5, subdivision (m) right of review. Moreover, in light of appellant's protestation, notably after the fact of pleading guilty, that ". . . my attorney didn't talk to me about that" and "my lawyer told me something else," thereby contradicting his counsel's version of advice given and received, I hold that, at best, appellant pled guilty with mental reservations, if not in a state of total confusion, as regards waiving his right of appeal. Every reasonable presumption against waiver, when applied, reinforces my conviction that a finding of nonwaiver is compelled.

I would, then, rule on the merits of the search and seizure issues presented by appellant were it not for the fact that at law his counsel on appeal has not perfected the issues for review. Appellant's opening brief challenges the affidavit supporting the search warrant as misleading the issuing magistrate by virtue of the affiant officer's either intentional omission or reckless disregard of material facts that when added would upon retesting result in quashing the search warrant for lack of probable cause. (See *People* v. *Kurland* (1980) 28 Cal.3d 376, 387 [168 Cal.Rptr. 667, 618 P.2d 213],

cert. den. 451 U.S. 987 [68 L.Ed.2d 844, 101 S.Ct. 2321]; see also *People* v. *Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130].)

Appellant's remaining contention on appeal, i.e., insufficient probable cause for appellant's warrantless arrest resulting in illegal acquisition of his confession and incriminating physical evidence is premised upon a favorable ruling finding *Kurland* error. Counsel for appellant has not augmented the record with the questioned affidavit and search warrant, effectively preventing this court from adding and retesting per *Kurland*. Instead appellate counsel has impermissibly attached to appellant's opening brief as Exhibit "A" apparent photocopies of the "Affidavit for Search Warrant" and incorporated supporting witness statements taken by the police for appellate review. The People's responding brief accurately pointed out that "the affidavit and warrant are not currently part of the appellate record." "Matters not presented by the record cannot, of course, be considered on the suggestion of counsel in briefs or in affidavits attached thereto. [Citation.]" (See *People* v. *Szeto* (1981) 29 Cal.3d 20, 35 [171 Cal.Rptr. 652, 623 P.2d 213].) We cannot "add and retest" to that which is not before us. Appellant has not filed a responsive closing brief.

Accordingly, I concur in the judgment.

Appellant's petition for review by the Supreme Court was denied November 14, 1985.